**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.:  1:19-cv-22206-ALTONAGA/GOODMAN**

GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL INSURANCE
COMPANY and GEICO CASUALTY CO.,

    Plaintiffs,

vs.

MARK A. CERECEDA, D.C., et al.,

    Defendants.

_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN**
**OPPOSITION TO THE CEDA ENTITIES' MOTION FOR ABSTENTION**

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO" or "Plaintiffs") respectfully submit this memorandum of law in opposition to the motion by the Defendant CEDA Entities[1], which asks the Court to abstain – pursuant to the abstention doctrine set forth in Brillhart v. Excess Insurance Company, 316 U.S. 491 (1942) and Wilton v. Seven Falls Co., 515 U.S. 277 (1995) – from exercising jurisdiction over Plaintiffs' declaratory judgment claim in this action, in favor of supposedly "parallel" county court no-fault insurance ("personal injury protection" or "PIP") collections lawsuits. See Docket No. 86.[2]

Much like the Burford and Thibodaux abstention arguments in Defendants' previous motion to dismiss (see Docket No. 57), the CEDA Entities' latest abstention motion somehow manages to argue for Brillhart-Wilton abstention without citing to any of the many decisions, from highly analogous federal PIP fraud and racketeering cases, in which courts repeatedly have rejected identical Brillhart-Wilton abstention arguments. As discussed below, the outcome should be no different here, and the CEDA Entities' motion should be denied.

---

[1] The CEDA Entities are Defendants Ceda Orthopedics & Interventional Medicine of Downtown/Little Havana, L.L.C. d/b/a 388-CEDA ("CEDA Downtown"), Ceda Orthopedics & Interventional Medicine of F.I.U./Kendall, L.L.C. d/b/a 388-CEDA ("CEDA Kendall"), Ceda Orthopedics & Interventional Medicine of Hialeah, L.L.C. d/b/a 388-CEDA ("CEDA Hialeah"), Ceda Orthopedics & Interventional Medicine of South Miami, L.L.C. d/b/a 388-CEDA ("CEDA Miami"), Ceda Orthopedics & Interventional Medicine of Cutler Bay, LLC d/b/a 388-CEDA ("CEDA Cutler Bay"), and Springs Crossing Imaging, L.L.C. ("Springs Crossing").

[2] At the outset, it is worthwhile to note the procedural posture of the CEDA Entities' belated abstention motion. The CEDA Entities have made this most recent abstention motion after litigating GEICO's claims in this action – including its declaratory judgment claim – for months. The CEDA Entities did not raise any Brillhart-Wilton arguments in Defendants' motion to dismiss, despite the fact that Defendants' motion to dismiss: (i) was 40 pages long; and (ii) included arguments under various other abstention doctrines, including the abstention doctrines set forth in Burford v. Sun Oil Co., 319 U.S. 315 (1943), La. Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 28 (1959), and their progeny. See Docket No. 57. What is more, even as the CEDA Entities now contend – for the first time – that the Court should abstain from exercising jurisdiction over GEICO's declaratory judgment claim in favor of supposedly "parallel" county court PIP collections lawsuits, the CEDA Entities have asserted counterclaims in this action seeking to recover on the exact same fraudulent PIP insurance billing that is the subject of GEICO's declaratory judgment claim. See Docket No. 84, pp. 180-251.

## **BACKGROUND**

### I.    **Plaintiffs' Complaint**

GEICO commenced this action on May 30, 2019. See Docket No. 1. GEICO respectfully refers the Court to the Complaint for the full contours of the CEDA Entities' and their co-Defendants' fraudulent scheme.

Briefly, however, GEICO alleges in this action that Defendant Mark A. Cereceda, D.C. ("Cereceda") – a chiropractor – owned the CEDA Entities, a series of entities that purported to provide healthcare services (the "Fraudulent Services") to GEICO insureds, and then billed GEICO for the Fraudulent Services as the assignees of the GEICO insureds' PIP insurance benefits. See Docket No. 1, passim.

As set forth in exacting detail in GEICO's Complaint, all of the PIP billing that Cereceda, the CEDA Entities, and their co-Defendants submitted or caused to be submitted to GEICO falsely represented that the CEDA Entities were operating in compliance with Florida law, and that their PIP charges for the Fraudulent Services were lawful and eligible for reimbursement. See Docket No. 1, ¶¶ 1167-1168, and passim. In fact, the CEDA Entities were not operating in compliance with Florida law, and their PIP charges were neither lawful nor eligible for reimbursement, because:

(i)     The CEDA Entities operated in pervasive violation of the Florida Health Care Clinic Act, Fla. Stat. § 400.990 et seq. (the "Clinic Act"), the Florida Patient Self-Referral Act, Fla. Stat. § 456.053 (the "Self-Referral Act"), and Florida law regulating advertising by chiropractors, Fla. Stat. § 460.413, F.A.C. Rule 64B2-15.001 (the "Chiropractor Advertising Laws"), rendering them ineligible to collect PIP Benefits in the first instance, and rendering their PIP insurance charges noncompensable and unenforceable (see Docket No. 1, ¶¶ 128-274).

(ii)    The underlying Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the GEICO insureds who purportedly were subjected to it (see Docket No. 1, ¶¶ 128-274, 420-1166).

(iii)   In many cases, the Fraudulent Services were not reimbursable as a matter of Florida law, because they were provided – to the extent that they were provided at all – by unsupervised massage therapists, and Florida law prohibits PIP insurance reimbursement for massage or for services provided by unsupervised massage therapists (see Docket No. 1, ¶¶ 275-419).

(iv)    In many cases, the Fraudulent Services were not reimbursable as a matter of Florida law, because they were provided – to the extent that they were provided at

all – by individuals, including unsupervised masseuses and chiropractic assistants, who lacked the licenses necessary to perform the services without supervision (see Docket No. 1, ¶¶ 275-419).

(v)     In many cases, the Defendants' charges for the Fraudulent Services misrepresented the identity of the person who performed the services, in order to conceal the fact that the Fraudulent Services had been performed by unsupervised massage therapists or chiropractic assistants, and therefore were non-reimbursable (see Docket No. 1, ¶¶ 275-419).

(vi)    In many cases, the Fraudulent Services never were provided in the first instance (see Docket No. 1, ¶¶ 420-1166).

(vii)   The billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provide in order to fraudulently inflate the charges submitted to GEICO (see Docket No. 1, ¶¶ 420-1166).

At bottom, and as more fully set forth in the Complaint, GEICO alleges that the Defendants billed for medically unnecessary and illusory services, unlawfully misrepresented the identities of the actual service providers, concealed the fact that they were unlawfully billing GEICO for physical therapy services and/or chiropractic services that were illegally performed – to the extent that they were performed at all – by unsupervised massage therapists and chiropractic assistants, and operated in pervasive violation of the Self-Referral Act and Chiropractor Advertising Laws. See Docket No. 1, ¶¶ 1167-1168, passim. Relatedly, GEICO alleges that the CEDA Entities failed to qualify for exemption from the health care clinic licensure requirements and, as a result, operated as unlicensed health care clinics in violation of the Clinic Act. Id. By extension, GEICO alleges that the Defendants' PIP billing falsely represented that the Fraudulent Services billed through the CEDA Entities were lawfully provided, and that the CEDA Entities were entitled to reimbursement on the charges, when in fact they were not. Id.

Based on these allegations, GEICO asserts claims against the Defendants for, variously, civil RICO violations under 18 U.S.C. § 1962(c) and (d), violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), violation of the Florida Civil Remedies for Criminal Practices Act (the "FCRCPA"), common law fraud, and unjust enrichment. See Docket No. 1, ¶¶ 1179, et seq. Through these claims, GEICO seeks to recover more than $20,000,000.00 it already has paid on the fraudulent billing that the Defendants submitted, or caused to be submitted, through the CEDA Entities. Id.

3

In addition, GEICO seeks a declaratory judgment to the effect that it is not liable to pay any of the more than $75,000.00 in <u>outstanding and unpaid</u> billing that the Defendants submitted through the CEDA Entities, because of the fraudulent and unlawful activity alleged in the Complaint. <u>Id</u>.

## II.     Defendants' Motion to Dismiss

On October 10, 2019, Defendants moved to dismiss GEICO's Complaint. <u>See</u> Docket No. 57. In their motion to dismiss, Defendants advanced a laundry-list of arguments for dismissal, including abstention arguments under the <u>Burford</u> abstention doctrine, the <u>Thibodaux</u> abstention doctrine, and Florida's separation of powers doctrine. <u>See</u> Docket No. 57, pp. 20-24.

What is more, while the Defendants did not explicitly argue for dismissal of GEICO's declaratory judgment claim under the <u>Brillhart-Wilton</u> abstention doctrine, they <u>did</u> contend that GEICO's declaratory claim was subject to dismissal on various other grounds. <u>See</u> Docket No. 57, pp. 36-38. In particular, aside from their abstention arguments under <u>Burford</u>, <u>Thibodaux</u>, and the Florida separation of powers doctrine, the Defendants argued that GEICO's declaratory judgment claim supposedly is implausible, because it would require the Court to find that none of the CEDA Entities' many outstanding PIP charges are lawful or reimbursable. <u>Id</u>. The Defendants also contended – in conclusory fashion – that it would "create havoc" if the Court were to declare the CEDA Entities' PIP charges to be fraudulent, unlawful, and non-reimbursable, because it would somehow interfere, in some unspecified way, with unspecified "personal injury lawsuits" by unnamed GEICO insureds. <u>Id</u>.

GEICO opposed Defendants' motion to dismiss (<u>see</u> Docket No. 64), and the Court held oral argument on the motion on November 19, 2019. <u>See</u> Docket No. 71. The Court then denied Defendants' motion to dismiss, for the reasons stated on the record. <u>See</u> Docket No. 72.

## III.    Defendants' Answer and Counterclaims

On January 7, 2020, Defendants responded to GEICO's Complaint by filing their Answer and Counterclaims. <u>See</u> Docket No. 84. In their Answer, Defendants generally denied the substantive allegations in the Complaint. In their Counterclaims, the CEDA Entities alleged – among other things – that:

(i)      The CEDA Entities operate healthcare practices, purport to provide healthcare services to GEICO insureds, and then seek payment from GEICO as assignees of the GEICO insureds' PIP insurance benefits. <u>See</u> Docket No. 84, pp. 180-181.

(ii)     GEICO supposedly has a "pattern and practice" of improperly denying the CEDA Entities' PIP claims, and the CEDA Entities have filed collections lawsuits against GEICO in Florida county court, seeking to collect on some of the PIP claims that GEICO denied. See Docket No. 84, p. 181-183, 191-196.

(iii)    Though GEICO alleges in this action that the CEDA Entities are not entitled to recover on any of their outstanding billing because of the fraudulent and unlawful activity described in the Complaint, GEICO has settled a handful of the CEDA Entities' county court PIP collections lawsuits in the months since it commenced this action. See Docket No. 84, pp. 196-197.

Based on these allegations, the CEDA Entities asserted – among other Counterclaims – their First Counterclaim for a declaratory judgment, seeking a declaration that:

(i)     GEICO's claim for a declaratory judgment – which seeks a declaration that the CEDA Entities may not collect on any of their outstanding billing – is improper to the extent that the CEDA Entities' outstanding billing is the subject of pending county court collections suits;

(ii)     any claims regarding PIP billing that is the subject of pending county court PIP collections suits supposedly must be asserted and resolved in the context of those county court collections suits;

(iii)    GEICO is prohibited from asserting claims in this action regarding PIP billing that is the subject of pending county court PIP collections suits, because it supposedly has failed to comply with certain purported notice provisions in Fla. Stat. 627.736(4)(i); and

(iv)    GEICO is prohibited from asserting claims in this action to the effect that the Defendants systematically billed for medically unnecessary services, illusory services, or otherwise non-reimbursable services, because such claims supposedly must be resolved on a "case by case" basis, apparently in the context of the CEDA Entities' multitudinous, piecemeal county court PIP collections lawsuits.

See Docket No. 84, pp. 199-204.

In the alternative to their First Counterclaim for a declaratory judgment, the CEDA Entities asserted their Fourth, Fifth, and Sixth Counterclaims, for breach of contract, unjust enrichment, and promissory estoppel – respectively – seeking to recover on the unpaid PIP billing that also is the subject of the CEDA Entities' pending county court PIP collections lawsuits. See Docket No. 84, pp. 215-225.

In other words, the CEDA Entities contend in their First Counterclaim that GEICO's declaratory judgment claim is improper, because it seeks a declaratory judgment regarding outstanding and unpaid PIP insurance claims that – at least to some extent – already are at issue in numerous county court PIP collections lawsuits. In the alternative, however, the CEDA

Entities assert their Fourth, Fifth, and Sixth Counterclaims, seeking to recover on those same PIP claims, even though they also are litigating some of those PIP claims in county court PIP collections lawsuits.

GEICO has moved to dismiss all of the CEDA Entities' Counterclaims, except for: (i) their Fourth Counterclaim for breach of contract, which seeks to recover on the unpaid PIP billing that also is the subject of the CEDA Entities' pending county court PIP collections suits; and (ii) their Tenth Counterclaim for breach of contract, which seeks to recover on unpaid PIP billing that has not yet been the subject of any county court PIP collections lawsuits. See Docket No. 85.

## IV.    **Defendants' Motion for Abstention**

The CEDA Entities filed the present motion for Brillhart-Wilton abstention on January 29, 2020. See Docket No. 86. As discussed above, the CEDA Entities filed this most recent abstention motion after Defendants' motion to dismiss – which likewise included various abstention arguments – was denied. Moreover, even as the CEDA Entities ask the Court to abstain from exercising jurisdiction over Plaintiffs' declaratory judgment claim, they have asserted Counterclaims in this action seeking to recover on the same unpaid PIP billing that is the subject of GEICO's declaratory judgment claim.

At bottom, the CEDA Entities argue in the present motion that: (i) they commenced lawsuits against GEICO in Florida county court, seeking to collect on some – but not all – of their outstanding PIP claims; (ii) the county court PIP collections lawsuits supposedly are "parallel" to this action; and therefore (iii) this Court should abstain from exercising jurisdiction over GEICO's declaratory judgment claim – which seeks a declaration to the effect that the CEDA Entities may not collect on their outstanding PIP billing – because the CEDA Entities' piecemeal county court PIP collections lawsuits supposedly are best situated to determine whether the CEDA Entities are entitled to collect on their outstanding PIP claims. See Docket No. 86, passim.

As discussed below, the CEDA Entities are incorrect, and numerous federal courts – adjudicating substantially similar PIP fraud and racketeering cases – have rejected identical Brillhart-Wilton and related abstention arguments.

**ARGUMENT**

I. **The Standards on a Motion for Abstention Pursuant to the Brillhart-Wilton Doctrine**

As this Court recently observed, the Declaratory Judgment Act "gives the federal courts competence to make a declaration of rights, but it does not impose a duty to do so." Arch Specialty Ins. Co. v. Goeseke, 2019 U.S. Dist. LEXIS 223154 at * 7 (S.D. Fla. 2019)(Altonaga, J.), citing Brillhart, 316 U.S. at 494; Wilton, 515 U.S. at 288. "Consistent with the foregoing precepts, the Eleventh Circuit has affirmed a district court's discretion to 'decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties.'" Id., quoting Ven-Fuel, Inc. v. Department of Treasury, 673 F.2d 1194, 1195 (11th Cir. 1982).

As this Court also has noted, in Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328 (11th Cir. 2005), the 11th Circuit "provided a list of non-exhaustive factors for district courts to use in evaluating whether to dismiss a federal declaratory judgment action where an underlying state court action 'involves some of the same issues and parties.'" Celtic Ins. Co. v. Digestive Med. Histology Lab, LLC, 2019 U.S. Dist. LEXIS 220902 at * 7 - * 8 (S.D. Fla. 2019)(Altonaga, J.), quoting First Mercury Ins. Co. v. Excellent Computing Distribs., 648 Fed. Appx. 861, 866 (11th Cir. 2016). In particular, the Ameritas factors include:

(i)   the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(ii)  whether the judgment in the federal declaratory action would settle the controversy;

(iii) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(iv)  whether the declaratory remedy is being used merely for the purpose of "procedural fencing" – that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;

(v)   whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(vi)  whether there is an alternative remedy that is better or more effective;

(vii) whether the underlying factual issues are important to an informed resolution of the case;

(viii)   whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(ix)   whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

See Ameritas, 411 F.3d at 1331.

These factors are "neither absolute nor is any one factor controlling"; they "are merely guideposts in furtherance of the Supreme Court's admonitions in Brillhart and Wilton." Celtic Ins. Co., supra, quoting Ameritas, 411 F.3d at 1331.

In this context, the 11th Circuit has rejected the suggestion that the Ameritas factors apply only when reviewing "parallel" actions – i.e., where a federal declaratory judgment action involves "substantially the same parties and issues" as a pending state proceeding. See First Mercury Ins. Co., supra; see also Arch Specialty Ins. Co., supra at * 11.[3] Nonetheless, it is clear that Brillhart-Wilton abstention is inappropriate unless there is a pending state proceeding that actually is suited to "fully resolve the controversy" between the parties. See, e.g., Ven-Fuel, Inc., supra; Federal Reserve Bank of Atlanta v. Thomas, 220 F.3d 1235, 1247 (11th Cir. 2000)("A court may exercise its discretion to dismiss a declaratory judgment action in favor of a pending state court proceeding that will resolve the same state law issues. It is an abuse of discretion, however, to dismiss a declaratory judgment action in favor of a state court proceeding that does not exist."); see also Endurance Am. Specialty Ins. Co. v. L. Pellinen Constr., Inc., 2019 U.S. Dist. LEXIS 193719 at * 7 - * 14 (M.D. Fla. 2019)(citing First Mercury Ins. Co. to note that the Eleventh Circuit has "never held that the Ameritas factors apply only when reviewing parallel actions", but nonetheless concluding that "[o]n balance—particularly given the unparallel nature of the proceedings—abstention is unwarranted.")(Emphasis added); Benchmark Ins. Co. v. Sustainable Energy Sols., Inc., 2019 U.S. Dist. LEXIS 108267 at * 8 - * 10 (M.D. Ala. 2019)(noting the First Mercury Ins. Co. decision, but also noting that "[i]t matters how similar the federal action is to the state court case. A federal court's discretion to abstain is more pronounced when the federal and state actions are 'parallel' … .")

---

[3] But see Geico Gen. Ins. Co. v. Lacayo, 2015 U.S. Dist. LEXIS 94790 at * 7 (S.D. Fla. 2015), affirmed by Geico Gen. Ins. Co. v. Kastenolz, 649 Fed. Appx. 647 (11th Cir. 2016)(referring to the existence of "parallel" proceedings as a "threshold issue" in the Brillhart-Wilton analysis).

More generally, <u>Brillhart-Wilton</u> abstention is inappropriate – and consideration of the <u>Ameritas</u> factors therefore is unwarranted – in cases where a plaintiff seeks both declaratory and coercive relief. <u>See</u>, <u>e.g.</u>, <u>Hall v. Sargeant</u>, 2018 U.S. Dist. LEXIS 171099 at * 13 - * 15 (S.D. Fla. 2018), <u>adopted</u> <u>by</u> 2018 U.S. Dist. LEXIS 195433 (S.D. Fla. 2018)(concluding that the <u>Brillhart-Wilton</u> doctrine did not apply where the plaintiff did not seek pure declaratory relief under the Declaratory Judgment Act, but also requested coercive relief).

## II.     <u>Brillhart-Wilton Abstention is Inapplicable Because GEICO Seeks Coercive Relief as Well as Declaratory Relief</u>

As a threshold matter, <u>Brillhart-Wilton</u> abstention is inapplicable in the present case because GEICO seeks coercive relief – <u>via</u> its RICO, fraud, FDUTPA, FCRCPA, and unjust enrichment claims – in addition to declaratory relief. <u>See</u>, <u>e.g.</u>, <u>Hall</u>, <u>supra</u>.

The CEDA Entities evidently are aware of this problem, and so they devote a large portion of their brief to arguing that: (i) some courts have applied a "heart of the action" test to abstain in cases involving both declaratory and coercive relief, where the coercive claims hinge on the outcome of the declaratory claim; and (ii) GEICO's declaratory judgment claim supposedly lies at the "heart of the action" in the present case, inasmuch as GEICO's damages claims supposedly depend on the outcome of its declaratory judgment claim. <u>See</u> Docket No. 86, pp. 8-11.

In actuality, and contrary to the CEDA Entities' contentions, the "heart of this action" is Defendants' pattern of fraudulent and unlawful PIP billing – not GEICO's declaratory judgment claim. For example, GEICO's RICO, FDUTPA, FCRCPA, common law fraud, and unjust enrichment claims do not depend upon the outcome of GEICO's declaratory judgment claim. Rather, GEICO's damages claims seek to recover the money that GEICO <u>already has paid</u> in reliance on Defendants' fraudulent PIP charges. By contrast, GEICO's declaratory judgment claim seeks a declaration to the effect that GEICO need not pay the Defendants' <u>outstanding and unpaid</u> PIP charges. <u>See</u> Docket No. 1, ¶¶ 1179, <u>et</u> <u>seq.</u> Though the CEDA Entities argue that some of the same factual allegations underpin both GEICO's claims for coercive relief and its claim for declaratory relief (<u>i.e.</u>, allegations to the effect that the CEDA Entities have been engaged in PIP fraud), they never get around to plausibly explaining how GEICO's claims for coercive relief (which seek to recover the payments GEICO <u>already has made</u> on Defendants' fraudulent PIP charges) "hinge upon the outcome" of GEICO's claim for declaratory relief

(which seeks a declaration to the effect that the CEDA Entities may not collect on their <u>unpaid</u> PIP billing). In fact – and though GEICO believes that it should prevail on <u>all</u> of its claims in this case – the Court could, if it wished, grant GEICO judgment on its coercive RICO, FDUTPA, FCRCPA, fraud, and unjust enrichment claims, without giving GEICO the requested declaratory judgment.

In this respect, and though the CEDA Entities neglect to mention it, federal courts – adjudicating substantially similar insurance fraud and racketeering cases – consistently have rejected arguments to the effect that <u>Brillhart-Wilton</u> abstention is appropriate in a case such as this, which features claims for <u>both</u> declaratory relief regarding unpaid billing <u>and</u> damages regarding already-paid billing.[4] <u>See</u>, <u>e.g.</u>, <u>Allstate Ins. Co. v. Auto Glass Am., LLC</u>, 2019 U.S. Dist. LEXIS 169333 at * 34 (M.D. Fla. 2019)(rejecting <u>Brillhart-Wilton</u> abstention in FDUTPA case regarding automobile insurance claims, where plaintiff-insurer not only asserted a declaratory judgment claim regarding unpaid billing, but also asserted coercive claims to recover the money it already had paid to the defendants); <u>State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C.</u>, 9 F. Supp. 3d 1303, 1308-1309 (M.D. Fla. 2014)(rejecting argument that plaintiff-insurer's declaratory judgment claim was at the "heart of the action" in similar PIP fraud case, where – as in the present case – the plaintiff-insurer's fraud-based claims to recover the money it already paid to the defendants could "stand independent" of the insurer's declaratory judgment claim to the effect that the defendants were not entitled to collect on their

---

[4] Inexplicably, the CEDA Entities fail to cite to <u>any</u> of the <u>many</u> federal decisions rejecting <u>Brillhart-Wilton</u> abstention in PIP fraud and RICO cases just like this one. Instead, the CEDA Entities rely on totally inapposite cases to support their "heart of the action" arguments. <u>See</u>, <u>e.g.</u>, Docket No. 86, pp. 8-11, <u>citing</u> <u>Chard v. Bd. of Trs. of Hollywood Firefighters' Pension Sys. & Hollywood</u>, 2019 U.S. Dist. LEXIS 169637 (S.D. Fla. 2019)(declaratory claims were at the heart of the action where the plaintiffs "principally" sought declaratory relief, and where the claims for damages were contingent on a declaration in plaintiffs' favor); <u>Gregory Haskin Chiropractic Clinics, Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 391 F. Supp. 3d 1151 (S.D. Fla. 2019)(though the plaintiff asserted a contract claim together with its declaratory claim, the declaratory claim was at the heart of the action, because "[t]he Court's decision on the declaratory judgment count will determine if the Plaintiff is entitled to damages under the breach of contract count.") By contrast, in the present case, GEICO's declaratory claim relates to the CEDA Entities' <u>unpaid</u> PIP billing, whereas GEICO's coercive RICO, fraud, FDUTPA, FCRCPA, and unjust enrichment claims seek to recover damages based on the fraudulent PIP charges that GEICO <u>already has paid</u>. The Court could grant GEICO judgment on its damages claims without granting GEICO the requested declaratory judgment, despite the CEDA Entities' strained attempt to demonstrate that GEICO's coercive claims depend on the outcome if its declaratory claim.

outstanding and unpaid PIP billing); <u>State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr.</u>, 2008 U.S. Dist. LEXIS 126513 at * 19 - * 20 (M.D. Fla. 2008)(rejecting <u>Brillhart-Wilton</u> abstention in similar PIP fraud action, because "the Plaintiffs seek both declaratory and coercive relief in their Amended Complaint", and where "Plaintiffs' Amended Complaint allege[d]a large fraud perpetuated by the Defendants, which would not be fully adjudicated in the state court action."); <u>see also</u> <u>State Farm Mut. Auto. Ins. Co. v. Vital Cmty. Care, P.C.</u>, 2018 U.S. Dist. LEXIS 80361 at * 13 (E.D. Mich. 2018)(rejecting <u>Brillhart-Wilton</u> abstention in similar PIP fraud and racketeering action, because the plaintiff-insurer was "seeking declaratory relief <u>as well as</u> monetary damages through common law fraud, unjust enrichment, and RICO claims.")(Emphasis in original); <u>State Farm Mut. Auto. Ins. Co. v. Schepp</u>, 616 F. Supp. 2d 340, 347 (E.D.N.Y. 2008)(in similar PIP fraud case, holding that "Brillhart/Wilton abstention, which only applies to declaratory judgment actions, also merits little discussion: it does not apply because plaintiffs seek, in addition to declaratory relief, damages based on theories of fraud and unjust enrichment."); <u>c.f.</u> <u>Allstate Ins. Co. v. Vizcay</u>, 2011 U.S. Dist. LEXIS 134785 (M.D. Fla. 2011)(in similar PIP fraud case, applying the more stringent abstention doctrine set forth in <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976), rather than <u>Brillhart-Wilton</u>, where – as in the present case – the plaintiff-insurer not only sought declaratory relief regarding unpaid PIP billing, but also sought damages based on PIP bills it already had paid).[5]

---

[5] The CEDA Entities do not brief the question of whether <u>Colorado River</u> abstention – rather than <u>Brillhart-Wilton</u> abstention – is appropriate here. <u>See</u> Docket No. 86, <u>passim</u>. Accordingly, Plaintiffs will not address <u>Colorado River</u> abstention, other than to note that <u>numerous</u> federal courts – adjudicating highly similar PIP fraud cases – have rejected <u>Colorado River</u> abstention under analogous circumstances. <u>See</u>, <u>e.g.</u>, <u>Physicians Group of Sarasota, L.L.C.</u>, 9 F. Supp. 3d at 1309-1310 (after first rejecting <u>Brillhart-Wilton</u> abstention in similar PIP fraud case, rejecting <u>Colorado River</u> abstention as well, because county court PIP collections suits were not legitimately "parallel" to plaintiff-insurer's federal PIP fraud and declaratory judgment action); <u>United Auto. Ins. Co. v. Fla. Wellness & Rehab. Ctr.</u>, 2009 U.S. Dist. LEXIS 141145 at * 21 - * 23 (S.D. Fla. 2009)(rejecting argument – <u>made by Cereceda himself in one of the several previous federal PIP fraud cases in which he was named as a defendant</u> – that <u>Colorado River</u> abstention was appropriate, because: (i) the county court PIP collections proceedings were not truly "parallel" to plaintiff-insurer's federal PIP fraud, RICO, and declaratory judgment action; and (ii) the county court PIP collections proceedings were not adequate to protect the plaintiff-insurer's rights). Plaintiffs are prepared to produce a large number of additional decisions rejecting <u>Colorado River</u> abstention in highly analogous PIP fraud cases, to the extent that the Court wishes to review them.

For this reason alone, the CEDA Entities' abstention motion should be denied.

III.    **Though Brillhart-Wilton Abstention is Inappropriate, the Ameritas Factors Nonetheless Weigh Against Abstention**

As set forth above, <u>Brillhart-Wilton</u> abstention is inappropriate in cases – like this one – that contain mixed claims for declaratory relief and damages. Accordingly, there is no need to proceed with an analysis of the <u>Ameritas</u> factors. <u>See</u>, <u>e.g.</u>, <u>Hall</u>, <u>supra</u> (declining to proceed with analysis of <u>Ameritas</u> factors where the complaint asserted claims for both declaratory and coercive relief).

Even so, the <u>Ameritas</u> factors weigh against abstention. Indeed – and as discussed below – many federal courts, adjudicating similar PIP fraud and racketeering cases, have held similar considerations to weigh against abstention in virtually identical contexts.

With respect to the first <u>Ameritas</u> factor, Florida does not have any strong interest in having the issues raised by GEICO's declaratory judgment claim adjudicated in the CEDA Entities' multitudinous, piecemeal county court PIP collections lawsuits. In fact, it is altogether unclear how a numerous individual county courts – each considering individual PIP claims submitted through the CEDA Entities – could ever adjudicate the issues raised by GEICO's declaratory judgment claim. For instance, how would a county court – adjudicating a single PIP claim or small group of PIP claims submitted through one or another of the individual CEDA Entities – determine whether the CEDA Entities engaged in the pre-determined, fraudulent treatment and billing protocol that is alleged in GEICO's Complaint, which only can be identified from a review and analysis of a large number of the Defendants' PIP claims submitted over an extended period of time? How would a county court adjudicating an individual PIP claim determine whether – as alleged in GEICO's Complaint – Cereceda unlawfully failed to supervise the business activities of the CEDA Entities, when Cereceda's failure to supervise the CEDA Entities only becomes apparent upon consideration of matters such as the CEDA Entities' pattern of unlawful advertisements, patterns of unlawful self-referrals between and among the CEDA Entities, patterns of billing for services that were beyond the scope of Cereceda's chiropractic license, and patterns in which the chiropractors who purported to supervise masseuses and chiropractic assistants at the CEDA Entities could not possibly have done so, given their superhumanly-crowded schedules? These kinds of patterns and issues are obviously beyond the scope of individual, piecemeal county court PIP collections lawsuits.

Even so, the CEDA Entities posit that Florida has a "strong interest" in having GEICO's declaratory judgment claim adjudicated in piecemeal county court PIP collections cases because the "question of interpreting insurance contracts and disputes over payment of insurance claims are undoubtedly questions of Florida law, not federal law." See Docket No. 86, p. 13.[6] However, GEICO's declaratory judgment claim does not ask the Court to "interpret" any insurance contracts or to resolve any garden-variety "disputes over payment of insurance claims". Rather, GEICO very colorably alleges a massive, complex PIP fraud and racketeering scheme, which only is apparent upon consideration of a large body of evidence that goes far beyond what is at issue in an individual, county court PIP collections lawsuit. In any case, Florida's PIP insurance law is "well settled state law" and "its difficulty in application and policy concerns do not rise to the level necessary for abstention." Physicians Injury Care Ctr., supra at * 19 - * 20.

What is more, the 11th Circuit has repeatedly recognized that "**[u]nder Florida law [an insurer] [is] entitled** to seek a judicial remedy to recover the amounts it paid [to a clinic operating in violation of the Clinic Act] and **to obtain a declaratory judgment that it is not required to pay [the clinic] the amount of the outstanding bills".** State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, 739 F.3d 579, 584 (11th Cir. 2013)(emphasis added); Allstate Ins.

---

[6] Though the CEDA Entities cite to a number of cases which supposedly support this argument, the cases are totally inapposite. None of them involved the kind of large-scale, complex PIP insurance fraud and racketeering case alleged herein, or mixed claims for declaratory relief and damages. See Docket No. 86, pp. 12-15, citing Geico Gen. Ins. Co. v. Pruitt, 2009 U.S. Dist. LEXIS 138992 (S.D. Fla. 2009)(a case in which the court abstained from exercising jurisdiction over GEICO's declaratory judgment claim, which sought a declaration regarding its obligations with respect to a single insurance claim, and which involved no allegations of large-scale, organized fraudulent activity occurring across a massive number of individual PIP claims); Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co., 657 F.3d 1135 (11th Cir. 2011)(a case that did not involve abstention at all); Mid-Continent Cas. Co. v. Northstar Homebuilders, Inc., 297 F. Supp. 3d 1329 (S.D. Fla. 2018)(Altonaga, J.)(a case in which an insurer sought a declaratory judgment regarding its obligations on a single insurance claim, and where the state action and federal action were parallel to the extent that "the motion for summary judgment before the state court, and the ensuing order, addressed and resolved the exact issues" raised by the insurer in its declaratory judgment action); GEICO General Insurance Company v. Lacayo, 2015 WL 4464020 (S.D. Fla. 2015)(a case in which an insurer sought a declaratory judgment regarding its obligations on a single insurance claim, and where the state action and federal action were actually parallel); Nationwide Ins. Co. of Am. v. Coastal Chem., Inc., 2013 U.S. Dist. LEXIS 107284 (S.D. Fla. 2013)(a case in which an insurer sought a declaratory judgment regarding its obligations on a single insurance claim, and where the state action and federal action were parallel to the point where the insurer's declaratory judgment action was the "mirror image" of the state court action).

Co. v. Vizcay, 826 F.3d 1326, 1330 (11th Cir. 2016)(same). Moreover, numerous federal courts, adjudicating insurance fraud and racketeering cases just like this one, have rejected arguments – like the argument raised by the CEDA Entities – to the effect that the pendency of county court PIP collections lawsuits has any bearing on the propriety of a declaratory judgment claim such as that raised by GEICO in the present case. See, e.g., Gov't Emples. Ins. Co. v. Clear Vision Windshield Repair, L.L.C., 2017 U.S. Dist. LEXIS 47353 at * 11 - * 13 (M.D. Fla. 2017)(rejecting argument that court should abstain from exercising jurisdiction over GEICO's request for a declaratory judgment because the requested declaratory relief pertained to insurance claims that were being litigated in county court collections lawsuits); Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d at 1307-1310 (rejecting arguments that, because of the pendency of county court PIP collections lawsuits, the federal court had to abstain from exercising jurisdiction over plaintiff-insurer's declaratory judgment claim, which sought a declaration that defendant healthcare providers were not entitled to collect on their outstanding billing); Fla. Wellness & Rehab. Ctr., supra at * 21 - * 23 (rejecting argument – made by Cereceda himself in one of the several previous PIP fraud cases where he was named as a defendant – to the effect that the court should abstain from exercising jurisdiction over a plaintiff-insurer's declaratory judgment claim because of the pendency of the defendants' county court collections lawsuits).

Accordingly, the first Ameritas factor weighs against abstention.

With respect to the second Ameritas factor, "judgment in the federal declaratory action" not only would "settle the controversy" between GEICO and the CEDA Entities, but would settle the controversy in a far more efficient and commonsense manner than the CEDA Entities' multitude of piecemeal county court PIP collections lawsuits. Simply put, if GEICO prevails on its declaratory judgment claim, then none of the CEDA Entities' outstanding PIP charges is entitled to reimbursement. This would resolve all of the CEDA Entities' outstanding PIP claims at one fell swoop, including those claims that currently are at issue in piecemeal county court collections suits.[7]

_____

[7] The CEDA Entities argue that judgment on GEICO's declaratory judgment claim might not resolve the controversy between the parties, but their arguments lack merit. See Docket No. 86, pp. 15-16. In particular, the CEDA Entities contend that, if the Court were to deny GEICO the requested declaratory judgment, or to grant GEICO declaratory judgment on only "portions of" its declaratory judgment claim, then some or all of their multitudinous county court PIP collections lawsuits might be able to proceed. This argument misses the point. The second

For related reasons, the third <u>Ameritas</u> factor likewise weighs against abstention. Obviously, if the Court were to issue the requested declaratory judgment, it would "serve a useful purpose in clarifying the legal relations at issue". As alleged in GEICO's declaratory judgment claim, the CEDA Entities presently are trying to collect PIP benefits from GEICO. <u>See</u> Docket No. 1, ¶¶ 1179-1187, and <u>passim</u>. GEICO contends in its declaratory judgment claim that the CEDA Entities are not legally entitled to collect those PIP benefits because – among other things – of their fraudulent and unlawful activities. <u>Id</u>. If the Court grants the declaratory judgment, then the "legal relations" between GEICO and the CEDA Entities will be "clarified", in that all of the CEDA Entities' outstanding PIP claims to GEICO will be resolved on a wholesale basis. <u>See</u>, <u>e.g.</u>, <u>State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC</u>, 68 F. Supp. 3d 744, 759 (E.D. Mich. 2014)(rejecting <u>Brillhart-Wilton</u> abstention in similar PIP fraud case, where – among other things – "the declaratory judgment action would clarify the legal relations by determining the fraudulent nature of the billings").

The fourth <u>Ameritas</u> factor weighs against abstention, as well. The CEDA Entities adduce no facts to suggest that GEICO commenced this action to engage in "procedural fencing" or a "race to <u>res judicata</u>". To the contrary, and as discussed above, it is altogether unclear how GEICO could prosecute the claims it asserts in this case in the context of a multitude of piecemeal county court PIP collections actions. <u>See</u>, <u>e.g.</u>, <u>Physicians Injury Care Ctr.</u>, <u>supra</u> (rejecting <u>Brillhart-Wilton</u> abstention in similar PIP fraud action, where – as in the present case – the plaintiff-insurer "allege[d]a large fraud perpetuated by the Defendants, which would not be fully adjudicated in the state court action."); <u>Pointe Physical Therapy, LLC</u>, <u>supra</u> (holding that plaintiff-insurer's declaratory judgment claim did not constitute "procedural fencing" or a race to <u>res judicata</u> where – as in the present case – the plaintiff-insurer argued that there was "no evidence before this Court that any state court faced with a determination of a single No-Fault

_____

Ameritas factor clearly is concerned with whether <u>the requested declaratory judgment</u> would settle the controversy between the parties, not whether <u>denial</u> of the requested declaratory judgment would settle the controversy. What is more, the present federal action – including not only GEICO's declaratory judgment claim, but also its damages claims – will resolve the controversy between the parties in a far more comprehensive manner than the CEDA Entities' piecemeal county court PIP collections cases, considering that the present case includes numerous parties, such as Cereceda himself, who are not parties in the county court proceedings, as well as numerous claims, such as GEICO's RICO and FDUTPA claims, that are not at issue in the county court proceedings. This tends to underscore why <u>Brillhart-Wilton</u> abstention is inappropriate in cases such as this, which include both declaratory and coercive claims.

claim for the treatment of a single patient has or ever will have before it the breadth of claims presented in this action, i.e. that a fraudulent predetermined protocol was applied across hundreds of patients in a coordinated scheme to defraud" the plaintiff-insurer). In any case – and as the 11th Circuit repeatedly has observed – Florida law permits just this type of PIP fraud and declaratory action. See Silver Star Health & Rehab, supra; Vizcay, supra.[8]

Relatedly, the fifth Ameritas factor also weighs against abstention. GEICO's declaratory judgment claim will not "increase the friction between our federal and state courts" or "improperly encroach on state jurisdiction". See, e.g., Physicians Injury Care Ctr., supra at * 20 (in similar PIP fraud case, rejecting abstention under both Brillhart-Wilton and Colorado River, and holding that "because jurisdiction in this matter is based on diversity, which naturally implicates state law, the Court does not expect an increase in friction between the federal and state courts, nor is this Court improperly encroaching on state jurisdiction."); Pointe Physical Therapy, LLC, 68 F. Supp. 3d at 759 (rejecting argument that declaratory judgment claim in similar PIP fraud and RICO case would increase friction between federal and state courts, or encroach on state jurisdiction, because "actions for fraud lie outside the No-Fault scheme under Michigan law").[9]

---

[8] Once again, the CEDA Entities rely on totally inapposite cases to support their "race to res judicata" arguments, and fail to mention the on-point decisions – from analogous federal PIP fraud cases – that tend to contravene their arguments. See Docket No. 86, pp. 19-20, citing West Coast Life Ins. Co. v. Ruth Secaul 2007-1 Ins. Trust, 2010 U.S. Dist. LEXIS 151589 (S.D. Fla. 2010)(abstaining in favor of state court action where state court action not only "involve[d] the same issues and largely the same parties", which is not the case here, but also was "more comprehensive" than the federal action because it "involve[d] more claims and also ha[d] a more comprehensive factual context for resolution of these issues", which also is not the case here); Gregory Haskin Chiropractic Clinics, Inc., supra (state court proceeding was actually parallel to federal court proceeding, which is not the case here).

[9] As the Court may note, in an attempt to show that this action somehow encroaches on state jurisdiction, the CEDA Entities reiterate various incorrect arguments from their motion to dismiss, which the Court already has denied. Compare Docket No. 86, pp. 14-15 (arguing, in this motion, that abstention is warranted because "the Florida Legislature has established a statutory framework through which claimants and insurers are required to resolve" disputes over PIP billing); with Docket No. 57, pp. 22 (arguing, in their motion to dismiss, that abstention was warranted because "it is evident that the State of Florida has attempted to articulate a comprehensive framework for resolving PIP disputes and licensing health care clinics with which this Court should abstain from interfering.") In fact – and as GEICO repeatedly has pointed out – numerous courts, including this Court, and including the 11th Circuit, have

Similarly, consideration of the sixth <u>Ameritas</u> factor also counsels against abstention. Though the CEDA Entities absurdly suggest that their multitude of county court PIP collections lawsuits are the best and most effective way to resolve the issues set forth in GEICO's declaratory judgment claim, they are incorrect. Numerous federal courts – faced with similarly-credible allegations of systematic insurance fraud – have rejected arguments to the effect that piecemeal collections proceedings are better suited than a plaintiff-insurer's declaratory judgment claim to determine whether a defendant's insurance billing is reimbursable. <u>See</u>, <u>e.g.</u>, <u>Auto Glass Am., LLC</u>, <u>supra</u> at * 30 - * 31 (rejecting argument that federal court should abstain from exercising jurisdiction in favor of innumerable county court collections proceedings, where "[w]hile the parties disagree on the precise number of small claims cases pending in state courts throughout Florida, the parties agree that they number over 1,000. And there appears to be no end in sight to the continued filing of these cases unless and until the underlying issues between the parties are resolved. This Court is better situated to analyze all of the underlying issues between the parties than state court judges scattered throughout the state, each handling only a handful of the small claims cases."); <u>Physicians Injury Care Ctr.</u>, <u>supra</u> (rejecting <u>Brillhart-Wilton</u> abstention in similar PIP fraud action, where – as in the present case – the plaintiff-insurer "allege[d]a large fraud perpetuated by the Defendants, which would not be fully adjudicated in the state court action."); <u>Fla. Wellness & Rehab. Ctr.</u>, <u>supra</u> at * 22 - * 23 (rejecting argument – <u>made by Cereceda himself in one of the several previous PIP fraud cases where he was named as a defendant</u> – that the court should abstain from exercising jurisdiction over declaratory judgment claim, where "[o]ne of the primary injuries alleged by Plaintiff in its Amended Complaint is Defendants' systemic abuse of the PIP claim process which has forced Plaintiff to engage in costly and time-consuming litigation. Thus, it is clear that staying this case would not adequately protect Plaintiff's rights: if the case was stayed, Plaintiff would be forced to continue litigating hundreds of claims in County Court, which is the very injury that it seeks a remedy for in its Amended Complaint."); <u>see</u> <u>also</u> <u>Gov't Emples. Ins. Co. v. Five Boro</u>

---

recognized a plaintiff-insurer's right to seek a judicial remedy in federal court with respect to fraudulent and unlawful PIP billing (<u>see</u>, <u>e.g.</u>, <u>Silver Star Health & Rehab</u>, <u>supra</u>; <u>Vizcay</u>, <u>supra</u>). What is more, the PIP statute itself clearly permits insurers to challenge fraudulent or unlawful PIP claims at any time, even after they are paid. <u>See</u> Fla. Stat. § 627.736(4)(b)(6). With that in mind, the CEDA Entities' contention, to the effect GEICO is required to litigate the Defendants' fraudulent activities in the context of their piecemeal county court PIP collections lawsuits, does not withstand any scrutiny.

Psychological Servs., P.C., 939 F. Supp. 2d 208, 216, and fn. 8 (E.D.N.Y. 2013)(in similar PIP fraud and racketeering case, rejecting arguments – just like the CEDA Entities' arguments in the present case – that "the advanced progress of many of the state court actions weighs strongly in favor of this Court abstaining from adjudicating GEICO's Declaratory Judgment claim", and noting that "Defendants contend that GEICO's fraud claims can be better resolved in the state courts than in this action. But GEICO alleges a systematic, institutionalized fraudulent scheme designed to produce thousands of individual fraudulent no-fault claims. I reject the suggestion that such a defense is better raised and resolved (potentially in conflicting ways) in every one of literally hundreds of small-dollar cases pending in numerous different state courts, rather than in a single case like this one.")[10]

The seventh and eighth Ameritas factors also militate against abstention. These factors "examine the ability of the state court to resolve the legal and factual issues relative to the federal court". Endurance Assur. Corp. v. Zoghbi, 403 F. Supp. 3d 1301, 1309 (S.D. Fla. 2019). However, in the present case, there is nothing to plausibly suggest that individual county courts, adjudicating individual PIP claims in piecemeal fashion, are properly equipped to adjudicate the legal and factual issues presented by GEICO's declaratory judgment claim. These issues involve extended patterns of fraudulent and unlawful billing that occurred over a large number of claims, and necessarily are beyond the scope of individual county court PIP collections proceedings aimed at collecting on individual PIP claims. As discussed herein, federal courts – adjudicating similar insurance fraud cases – have rejected arguments to the effect that innumerable state court collections proceedings were better suited to resolve the underlying issues than a single federal declaratory judgment claim. See, e.g., Auto Glass Am., LLC, supra; Fla. Wellness & Rehab. Ctr., supra Five Boro Psychological Servs., P.C., supra (rejecting arguments that state courts

---

[10] Even so, the CEDA Entities argue that – somehow – it is this Court's exercise of jurisdiction that could lead to inconsistent rulings on whether the CEDA Entities are entitled to recover on their PIP claims, etc. See Docket No. 86, p. 19. However, the CEDA Entities do not offer any on-point authority which actually supports their counterintuitive proposition. The reason for this is simple: It obviously is the CEDA Entities' multitude of individual PIP collections proceedings, rather than GEICO's declaratory judgment claim, that pose the real risk of inconsistent rulings. See, e.g., Five Boro Psychological Servs., P.C., supra (rejecting the notion that plaintiff-insurer's PIP fraud allegations were better resolved in numerous PIP collections lawsuits, with potentially varying outcomes, rather than in a single federal action).

adjudicating individual insurance collections cases were better situated to resolve issues presented by similar declaratory judgment and fraud-based claims).[11]

Finally, the ninth Ameritas factor may arguably weigh in favor of abstention, but just barely. While there certainly is some nexus between the legal issues in this case, Florida state law, and public policy, the 11th Circuit has recognized that – under Florida law – insurers are entitled to assert these types of claims for declaratory relief. See, e.g., Silver Star Health & Rehab, supra; Vizcay, supra. In any case, and as noted above, Florida's PIP insurance law is "well settled state law" and "its difficulty in application and policy concerns do not rise to the level necessary for abstention." Physicians Injury Care Ctr., supra at * 19 - * 20.

Accordingly, to the extent that the Court finds it necessary to even consider the Ameritas factors, they weigh against abstention. The CEDA Entities' motion therefore should be denied.

## IV.    The CEDA Entities' County Court PIP Collections Lawsuits are Not Suited to Fully Resolve the Controversy Between the Parties

As discussed above, the 11th Circuit has rejected the suggestion that the Ameritas factors apply only when reviewing "parallel" actions. See, e.g., See First Mercury Ins. Co., supra. Nonetheless, it is clear that Brillhart-Wilton abstention is inappropriate unless there is a pending state proceeding that actually is suited to "fully resolve the controversy" between the parties, and the presence or absence of a parallel state court proceeding therefore remains an important consideration in the Brillhart-Wilton analysis. See, e.g., Ven-Fuel, Inc., supra; Federal Reserve Bank of Atlanta, supra; L. Pellinen Constr., Inc., supra.

---

[11] Relatedly, the CEDA Entities advance a meritless argument to the effect that GEICO was required to assert its declaratory, RICO, FDUTPA, and other fraud-based claims in this case as "compulsory counterclaims" in their multitude of county court PIP collections cases. See Docket No. 86, p. 19. In fact, GEICO's fraud-based claims in this case – which depend on different facts than the CEDA Entities' county court PIP collections cases – are not compulsory counterclaims in the county court collections cases. C.f., State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc., 2012 U.S. Dist. LEXIS 59671 at * 3 - * 4 (M.D. Fla. 2012)(healthcare providers' claim that plaintiff-insurer systematically underpaid PIP claims was not a compulsory counterclaim in relation to plaintiff-insurer's PIP fraud claims, "even though both claims relate to the same bills", because the counterclaim was not based on the same core facts as the plaintiff-insurer's fraud-based claims). In any event, Florida law expressly provides that an insurer may challenge fraudulent or unlawful PIP claims at any time, even after they are paid. See Fla. Stat. § 627.736(4)(b)(6)(permitting insurers to assert that PIP claims were medically unnecessary, fraudulent, unlawful, upcoded, etc., "at any time, including after payment of the claim")(emphasis added).

With that in mind, federal courts have rejected arguments – like the CEDA Entities' arguments herein – to the effect that state court PIP collections proceedings are somehow "parallel" to a plaintiff-insurer's fraud and declaratory judgment action, or that a multitude of piecemeal state court collections lawsuits are in a position to resolve the kinds of systematic insurance fraud issues that underpin GEICO's declaratory judgment claim in the present case. See, e.g., Physicians Injury Care Ctr., supra (rejecting Brillhart-Wilton abstention, where "Plaintiffs' Amended Complaint alleges a large fraud perpetuated by the Defendants, which would not be fully adjudicated in the state court action."); Auto Glass Am., LLC, supra at * 30 - * 31 (rejecting abstention in favor of county court collections proceedings, and noting that the federal court was "better situated to analyze all of the underlying issues between the parties than state court judges scattered throughout the state, each handling only a handful of the small claims cases"); Five Boro Psychological Servs., P.C., supra.

At bottom, the CEDA Entities' county court PIP collections proceedings do not provide a forum in which GEICO can fairly litigate the complex and multifaceted pattern of PIP fraud that forms the basis for its declaratory judgment claim in this action. For this reason, abstention would be particularly improper.

## CONCLUSION

For the reasons stated above, the CEDA Entities' motion should be denied in its entirety.

Respectfully submitted,

_/s/ Max Gershenoff_____
Max Gershenoff (admitted pro hac vice)
New York Bar No. 4475240
Christina Bezas (admitted pro hac vice)
New York Bar No. 5247556
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
Phone:  (516) 357-3000
Facsimile:  (516) 357-3333
max.gershenoff@rivkin.com
cbezas@rivkin.com

John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Kristen Wenger (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone:  (904) 598-6100
Facsimile:  (904) 598-6204
ltrowell@sgrlaw.com
jmarino@sgrlaw.com
kwenger@sgrlaw.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 7, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is also being served on this day on the counsel of record as indicated on the attached Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing via the CM/ECF system.

*/s/ John P. Marino*
Attorney

21

## <u>SERVICE LIST</u>

John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Kristen L. Wenger (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone: (904) 598-6100
Facsimile: (904) 598-6204
jmarino@sgrlaw.com
ltrowell@sgrlaw.com
kwenger@sgrlaw.com

Max Gershenoff (*admitted pro hac vice*)
New York Bar No. 4475240
Christina Bezas (*admitted pro hac vice*)
New York Bar No. 5247556
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
Phone: (516) 357-3000
Facsimile: (516) 357-3333
christina.bezas@rivkin.com
max.gershenoff@rivkin.com

*Attorneys for Plaintiffs*

Adam Michael Foslid (FBN 0682284)
Ryan K. Stumphauzer (FBN 0012176)
Timothy Andrew Kolaya (FBN 056140)
Stumphauzer Foslid Sloman Ross & Kolaya, PLLC
1 SE 3rd Avenue – Suite 1820
Miami, Florida 33131
Phone: (305) 371-9686
Facsimile: (305) 371-9687
afoslid@sfslaw.com
rstumphauzer@sfslaw.com
tkolaya@sfslaw.com

*Attorneys for Defendants*