UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-22206-CIV-ALTONAGA/Goodman

GOVERNMENT EMPLOYEES
INSURANCE CO.; *et al.*,

      Plaintiffs,

v.

MARK A. CERECEDA, D.C.; *et al.*,

      Defendants.

_____/

**ORDER**

**THIS CAUSE** is before the Court on two motions: (1) Plaintiffs, Government Employees

Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty

Co.'s (collectively "GEICO['s]") Motion and Supporting Memorandum to Dismiss [the CEDA

Clinics']¹ Counterclaims [ECF No. 85];² and (2) the CEDA Clinics' Motion to Stay or Abstain

Temporarily as to Claims That Are the Subject of Pending State Court Actions  [ECF No. 86].³

The Court has reviewed the Complaint [ECF No. 1], Defendants'⁴ Answer and Affirmative

Defenses to Complaint and [the CEDA Clinics'] Counterclaims [ECF No. 84], the parties' written

---

¹ The "CEDA Clinics" include Defendants, Ceda Orthopedics & Interventional Medicine of Downtown/Little Havana, L.L.C.; Ceda Orthopedics & Interventional Medicine of F.I.U./Kendall, L.L.C.; Ceda Orthopedics & Interventional Medicine of Hialeah, L.L.C.; Ceda Orthopedics & Interventional Medicine of South Miami, L.L.C.; Ceda Orthopedics & Interventional Medicine of Cutler Bay, LLC; and Springs Crossing Imaging, L.L.C.

² The CEDA Clinics filed a Response in Opposition to [GEICO's] Motion to Dismiss [ECF No. 88]; and GEICO filed a Reply [ECF No. 90].

³ GEICO filed a Memorandum of Law in Opposition to the CEDA [Clinics'] Motion for Abstention [ECF No. 87]; and the CEDA Clinics filed a Reply [ECF No. 89].

⁴ The Defendants include the CEDA Clinics; their owner, Mark A. Cereceda, D.C.; and various individuals associated with the CEDA Clinics.  (*See generally* Compl.).

submissions, the record, and applicable law. For the following reasons, GEICO's Motion is granted in part; and the CEDA Clinics' Motion is denied.

## I.     BACKGROUND

This case arises from allegedly unlawful personal injury protection ("PIP") insurance billing for healthcare services. (*See generally* Compl.). GEICO brought this action against a series of healthcare clinics and individuals, alleging they engaged in pervasive billing fraud and provided "medically unnecessary, illusory, unlawful, and otherwise non-reimbursable health care services, including initial examinations, follow-up examinations, pain management injections, diagnostic imaging services, physical therapy services and/or chiropractic services" to Florida automobile accident victims eligible for coverage under GEICO's PIP insurance policies. (*Id.* ¶ 1).

Defendants allegedly orchestrated the no-fault insurance fraud scheme at the CEDA Clinics, where the healthcare services were performed. (*See generally id.*). GEICO seeks to recover more than $20,000,000.00 Defendants allegedly wrongfully obtained from GEICO by submitting fraudulent no-fault insurance charges through the CEDA Clinics. (*See id.* ¶ 1). GEICO also seeks a declaration it is not legally obligated to reimburse more than $75,000.00 in pending, fraudulent PIP claims Defendants submitted through the CEDA Clinics. (*See id.* ¶ 2).

GEICO's 43-count Complaint asserts the following claims against Defendants: declaratory judgment; violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes section 501.201, *et seq.*; violation of the Florida Civil Remedies for Criminal Practices Act, Florida Statutes section 772.101, *et seq.*; civil RICO claims pursuant to 18 U.S.C. sections 1962(c) and (d); common law fraud; and unjust enrichment.[5] (*See generally id.*).

---

[5] Defendants moved to dismiss GEICO's Complaint on several grounds. (*See* Defs.' Mot. to Dismiss [ECF No 57]). After extensive briefing and a hearing, the Court entered an Order denying Defendants' Motion. (*See* Nov. 11, 2019 Order [ECF No. 72]). Defendants then filed their Answer and Affirmative Defenses to the Complaint. (*See* Defs.' Answer and Affirmative Defenses).

The CEDA Clinics bring 14 counterclaims against GEICO, alleging GEICO engaged in a pattern and practice of wrongfully denying legitimate PIP claims submitted by the CEDA Clinics. (*See generally* Countercls.).  In doing so, the CEDA Clinics identify three separate categories of claims at issue in GEICO's Complaint: (1) unpaid claims that are the subject of a pending PIP lawsuit in Miami-Dade or Broward County; (2) claims resolved in a prior PIP lawsuit — either by way of a settlement, a payment and dismissal with prejudice, or otherwise; and (3) wholly or partially unpaid claims not yet the subject of a PIP lawsuit.  (*See id.* ¶ 14).  The CEDA Clinics assert the following claims against GEICO: declaratory judgment; breach of contract; unjust enrichment; promissory estoppel; tortious interference with a contractual or prospective business relationship; and defamation.  (*See generally id.*).

GEICO moves to dismiss the counterclaims[6] for failure to state claims under Federal Rule of Civil Procedure 12(b)(6).  For their part, the CEDA Clinics request the Court temporarily stay or abstain from hearing a portion of the case — namely, certain claims pending in Florida state court.  The Court addresses GEICO's Motion and the CEDA Clinics' Motion in turn.

## II.  LEGAL STANDARD[7]

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient

---

[6] As stated, the CEDA Clinics bring 14 claims against GEICO.  (*See generally* Countercls.).  GEICO contends the CEDA Clinics fail to state claims for relief in 12 of the 14 counts.  Regarding the other two counts — for breach of contract (Counts IV and X) — GEICO advises it does not seek dismissal of these claims.  (*See* GEICO's Mot. 1 n.1).

[7] "A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." *Geter v. Galardi S. Enters., Inc.*, 43 F. Supp. 3d 1322, 1325 (S.D. Fla. 2014) (internal quotation marks and citation omitted).  As to the CEDA Clinics' Motion, the question of "[w]hether . . . abstention should be raised under Rule 12(b)(1) or 12(b)(6) is the subject of some dispute." *Parker v. Judicial Inquiry Comm'n of the State of Ala.*, 212 F. Supp. 3d 1171, 1174 n.1 (M.D. Ala. 2016) (alterations added); *see also Allstate Ins. Co. v. Auto Glass Am., LLC*, 6:18-cv-2184, 2019 WL 4751729, at *10 (M.D. Fla. Sept. 30, 2019) (discussing the dispute and lack of clarity in the law); *Selton v. U.S. Bank Tr. Nat'l Ass'n*, 124 F. Supp. 3d 1245, 1250 n.6 (M.D. Fla. 2015) (noting "the Eleventh Circuit does not appear to have addressed the issue, and its sister circuits have intentionally evaded it.") (citation omitted).  The Court need not decide which rule is applicable to the CEDA Clinics' abstention

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added) (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added) (citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

---

argument. Indeed, the Court reaches its decision by relying on the Complaint's and the Counterclaims' allegations, all of which are reviewed under the more stringent Rule 12(b)(6) standard.

## III.     DISCUSSION

### A.     GEICO's Motion

GEICO argues the CEDA Clinics fail to state claims for relief.  (*See generally* GEICO's Mot.).  The Court address the five sets of claims below — specifically, the CEDA Clinics' declaratory judgment, unjust enrichment, promissory estoppel, defamation, and tortious interference claims.[8]

### 1.     Declaratory Judgment (Counts I–III)

In Counts I, II, and III, the CEDA Clinics assert counterclaims for declaratory judgment against GEICO.  (*See* Countercls. ¶¶ 78–152).  It is wholly within a federal court's discretion whether to entertain a case under the Declaratory Judgment Act, 28 U.S.C. section 2201, even if the action properly falls within the Court's jurisdiction.  *See Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014) (noting "[i]t is well established that district courts have exceptionally broad discretion in deciding whether to issue a declaratory judgment, and the remedy is not obligatory" (alteration added; citation omitted)).  "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  Consequently, "a district court is authorized, in the sound exercise of its

---

[8] GEICO contends Counts VII–IX "seek to recover on unpaid PIP claims that previously were resolved through judgments or settlements in the CEDA [Clinics]' previous county court PIP collections lawsuits[;]" and thus, the claims are barred by *res judicata*.  (GEICO's Mot. 17 (alterations added; emphasis omitted)). At a hearing on Defendants' Motion to Dismiss, the undersigned found *res judicata* inappropriate in instances involving complaints such as GEICO's.  (*See* Nov. 19, 2019 Tr. [ECF No. 83] 65:10–12). Similarly, GEICO's *res judicata* contention concerning the CEDA Clinics' counterclaims fails to persuade, especially given the Court's finding at an extensive hearing addressing the same argument as to Defendants' Motion to Dismiss.  Accordingly, Count VII survives GEICO's Motion; Counts VIII and IX are dismissed for reasons discussed in this Order.

discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Id.* (footnote call number omitted).

"In addition to exercising such discretion to decline jurisdiction, courts may dismiss a counterclaim for declaratory judgment as redundant." *Mid-Continent Cas. Co. v. JWN Constr., Inc.*, No. 9:17-cv-80286, 2017 WL 4347385, at *3 (S.D. Fla. Sept. 29, 2017) (citations omitted). "When deciding whether to dismiss a counterclaim on the basis that it is redundant, courts consider whether the declaratory judgment serves a useful purpose." *Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1217 (S.D. Fla. 2011) (internal quotation marks and citation omitted). "To determine whether the declaratory judgment serves a useful purpose, courts should consider whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the counterclaim." *Mid-Continent Cas. Co.,* 2017 WL 4347385, at *3 (quotation marks and citation omitted).

GEICO contends resolution of its claims and Defendants' affirmative defenses will resolve the factual and substantive issues raised by the CEDA Clinics' declaratory judgment counterclaims. (*See* GEICO's Mot. 7–10; GEICO's Reply 2–3, 5–7).[9]  The CEDA Clinics insist their declaratory relief requests serve a useful purpose because "it is clear [] resolution of the claims in GEICO's Complaint will not resolve all of the issues raised in the CEDA [Clinics'] Counterclaim." (CEDA Clinics' Resp. 4–5 (alterations added)).  The Court agrees with GEICO and finds the counterclaims for declaratory relief wholly redundant.

The CEDA Clinics seek declarations: (1) GEICO is precluded from raising issues, claims, and defenses relating to PIP claims pending in county court or to PIP claims resolved in prior litigation (*see* Countercls. ¶¶ 102, 130); (2) GEICO is required to pursue its claims on a claim-by-

---

[9] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

claim basis and pursuant to Florida's statutory framework (*see id.* ¶¶ 102, 130, 152); and (3) GEICO's claims concerning PIP claims pending in county court and those resolved in prior litigation are barred by the statute of limitations (*see id.* ¶¶ 102, 130). These allegations are clearly subsumed within the affirmative defenses.[10] (*See* Defs.' Answer and Affirmative Defenses 175–177, 179 (raising affirmative defenses of statute of limitations, *res judicata*, claim-splitting, and waiver and payment)).

The CEDA Clinics further seek a declaration GEICO's allegations and claims concerning whether the CEDA Clinics were exempt from licensing requirements and issues relating to whether the CEDA Clinics billed for unauthorized services should be resolved by the appropriate state departments, agencies, and boards. (*See* Countercls. ¶¶ 102, 130, 152). These issues permeate GEICO's claims against the CEDA Clinics. (*See* Compl. ¶¶ 96–98, 129–30, 132–87). The CEDA Clinics even admit "GEICO is attempting to obtain a judicial determination . . . the CEDA [Clinics] did not satisfy the criteria for exemption from licensure under the Health Care Clinic Act and, therefore, was [sic] providing unauthorized medical services . . . ." (Countercls. ¶¶ 94, 122, 145 (alterations added)). It is thus clear resolution of GEICO's claims will decide the identical issues presented in the CEDA Clinics' counterclaim.

"Where, as here, the declaratory judgment count[s] . . . serve no useful purpose because the issues will be resolved by another claim [or affirmative defenses], courts generally decline to entertain the declaratory judgment count[s]." *Organo Gold Int'l, Inc. v. Aussie Rules Marine*

---

[10] (*Compare* Countercls. ¶¶ 111–12 ("To the extent GEICO failed to raise or otherwise assert these issues in the context of [claims resolved in prior litigation], GEICO should be precluded from doing so now based on the doctrines and legal effect of *res judicata*, compulsory counterclaims, claim splitting, waiver, and estoppel. Accordingly, the CEDA [Clinics] seek a declaration from the Court that GEICO is barred from asserting or otherwise including within the scope of this action any of the [claims resolved in prior litigation.]" (alterations added; paragraph number omitted)); *with* Defs.' Answer and Affirmative Defenses (raising affirmative defenses of statute of limitations, *res judicata*, claim-splitting, and waiver and payment, and equitable estoppel)).

CASE NO. 19-22206-CIV-ALTONAGA/Goodman

*Servs., Ltd.*, 416 F. Supp. 3d 1369, 1376 (S.D. Fla. 2019) (alterations added); *see also id.* (collecting cases).  The Court follows suit.  *See Ctr. Hill Courts Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 19-cv-80111, 2019 WL 7899220, at *3 (S.D. Fla. Apr. 10, 2019) (declining to hear declaratory judgment claim because "[r]esolution of [p]laintiff's claim and [d]efendant's affirmative defenses will decide the factual and substantive issues presented by [d]efendant's [c]ounterclaim." (alterations added)); *U.S. ex rel. BAC Funding Consortium, Inc. v. Westchester Fire Ins. Co.*, No. 13-22536-Civ, 2014 WL 186125, at *5 (S.D. Fla. Jan. 16, 2014) ("Because the resolution of [the plaintiff's] claims and [the defendant's] defenses thereto would resolve the questions raised in [the defendant's] counterclaim, the Court finds that the counterclaim for declaratory judgment serves no useful purpose." (alterations added; citation omitted)).

Accordingly, the Court will exercise its discretion and decline to entertain the declaratory judgment claims in Counts I, II, and III.[11]

### 2.  Unjust Enrichment (Counts V, VIII, XI)

To state a claim of unjust enrichment under Florida law, a plaintiff must allege three elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants [sic] to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citations omitted).  "And as to the first element, the benefit conferred on the defendant must be a *direct* benefit." *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017) (emphasis in original; citing *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017)).

---

[11] Because the Court dismisses the CEDA Clinics' declaratory judgment claims as wholly redundant, the Court does not address GEICO's contention Counts I–III are legally defective.  (*See* GEICO's Mot. 10–14).

GEICO states the CEDA Clinics do not allege they conferred a direct benefit on GEICO. (*See* GEICO's Mot. 15). According to GEICO, a "healthcare provider's provision of healthcare services to an insurance company's insured does not confer a benefit on the insurance company," much less directly so, and so the Court should dismiss these claims. (*Id.* (emphasis removed)).

The CEDA Clinics assert their counterclaims sufficiently allege the conferral of a benefit on GEICO. (*See* CEDA Clinics' Resp. 13). The CEDA Clinics state because the clinics provided valuable services to GEICO insureds without reimbursement, GEICO was unjustly enriched by its failure to pay the value of those services. (*See id.* 12). According to the CEDA Clinics, GEICO "fails to appreciate the[se] allegations in the Counterclaim, as well as controlling case law on this precise issue." (*Id.* (alteration added)). The Court disagrees.[12]

The CEDA Clinics contend paragraphs 178, 233, and 290 contain sufficient allegations to state plausible claims for unjust enrichment. (*See id.* (citing these paragraphs)). The CEDA Clinics allege: "Provider conferred a benefit on GEICO, in that Provider provided valuable medical services to Claimant, a person insured under a policy of insurance issued by GEICO, following a motor vehicle accident, for which PIP Coverage existed, thereby incurring the costs and expenses GEICO was required to pay under its policy of insurance for these medical services." (Countercls. ¶¶ 178, 233, 290).

---

[12] The Court is aware it has allowed similar unjust enrichment claims to proceed past the dismissal stage. *See Nordt v. Colina Ins. Ltd.*, No. 17-21226-Civ, 2017 WL 4225550, at *7 (S.D. Fla. Sept. 22, 2017); *see also Reva, Inc. v. Humana Health Benefit Plan of La., Inc.*, No. 18-20136-Civ, 2018 WL 1701969, at *3, 7 (S.D. Fla. Mar. 19, 2018) (finding the plaintiff stated an unjust enrichment claim but skeptical discovery would confirm the conferral of a direct benefit to the defendant-insurers; the claim was ultimately dismissed on grounds of federal preemption). Nevertheless, in a later decision, and after review of recent Florida Supreme Court and Eleventh Circuit case law, the undersigned found the plaintiff "failed to show how providing medical services to [the defendant] insureds conferred a direct benefit on [the defendant]." *John C. Nordt, III, M.D. & Assocs., P.A. v. Colina Ins. Ltd.*, No. 17-21226-Civ, 2018 WL 2688793, at *4 (S.D. Fla. Apr. 13, 2018) (alterations added); *see also id.* ("Since any benefit [the plaintiff] may have conferred on [the defendant] is indirect at best, [the defendant] fails to establish an essential element of unjust enrichment, rendering all other facts immaterial." (alterations added; citation omitted)).

CASE NO. 19-22206-CIV-ALTONAGA/Goodman

The foregoing allegations fail to show how the CEDA Clinics conferred a direct benefit upon GEICO for medical services rendered to GEICO's insureds.[13]   The CEDA Clinics "can hardly be said to have conferred any benefit, even an attenuated one, upon [GEICO] by providing [its insureds] with health care services." *GVB MD v. Aetna Health Inc.*, No. 19-22357-Civ, 2019 WL 6130825, at *6 (S.D. Fla. Nov. 19, 2019) (alterations added; citation omitted).  Certainly, "the benefits of healthcare treatment flow to patients, not insurance companies, and as such, a third-party providing services to an insured confers nothing on the insurer except[] a ripe claim for reimbursement, which is hardly a benefit." *Id.* (alteration added; internal quotations marks and citation omitted); *see also Columna, Inc. v. Aetna Health, Inc.*, No. 9:19-cv-80522, 2019 WL 4345675, at *3 (S.D. Fla. Sept. 12, 2019) ("[Provider's] provision of medical treatment to [the defendant's] insureds benefits the *insureds*, not [the provider], based on on-point case law and this [District's] own precedent[.]" (alterations added; emphasis in original)).

In sum, the CEDA Clinics "conferred (at best) an indirect benefit" on GEICO and thus the CEDA Clinics "cannot satisfy the first element of an unjust enrichment" claim.  *Johnson*, 687 F. App'x at 830; *see also GVB MD*, 2019 WL 6130825, at *7 (dismissing unjust enrichment claim where medical provider sought reimbursement for the value of unpaid medical treatments provided to the insurer's members); *GVB MD, LLC v. United Healthcare Ins. Co.*, No. 19-20727-Civ, 2019 WL 3409183, at *8 (S.D. Fla. May 9, 2019), *report and recommendation adopted*, 2019 WL

---

[13] The Court is not persuaded by the CEDA Clinics' invocation of *Baptist Hospital of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 385 F. Supp. 3d 1289 (S.D. Fla. 2019).  In *Baptist Hospital*, the plaintiff-providers entered into a provider agreement with the defendant-insurer, under which the defendant-insurer was obligated to compensate plaintiff-providers at the rates set forth in the agreement.  *See id.* at 1291.  Contrary to the CEDA Clinics' insistence, *Baptist Hospital* is not "controlling case law on th[e] precise issue" before the Court (CEDA Clinics' Resp. 12 (alteration added)), and the CEDA Clinics' allegations are *not* indistinguishable from those presented in *Baptist Hospital* (*see* CEDA Clinics' Resp. 13).  Nor is the CEDA Clinics' parenthetical citation to *Merkle v. Health Options, Inc.*, 940 So. 2d 1190 (Fla. 4th DCA 2006), relevant to the Court's analysis.  *See id.* at 1199 (reversing trial court's dismissal because trial court improperly considered merits of the plaintiff's unjust enrichment claim at the motion-to-dismiss stage).

10

3408925 (S.D. Fla. May 28, 2019) (recommending dismissal of unjust enrichment claim because the plaintiff "can hardly be said to have conferred any benefit, even an attenuated one, upon [the defendant] by providing [the insureds] with health care services." (alterations added)); *Gov't Emps. Ins. Co. v. KJ Chiropractic Ctr. LLC*, No. 6:12-cv-1138, 2014 WL 12617573, at *2 (M.D. Fla. Aug. 5, 2014) (dismissing unjust enrichment claim because the medical providers' "provision of medical benefits to GEICO's policyholders does not provide a benefit to GEICO.").

Consequently, Counts V, VIII, and XI are dismissed.

### 3. Promissory Estoppel (Counts VI, IX, XII)

In Counts VI, IX, and XII, the CEDA Clinics assert claims of promissory estoppel. (*See* Countercls. ¶¶ 187–204, 244–263, 298–315). A cause of action for promissory estoppel contains three elements: (1) a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person" and (2) "which does induce such action or forbearance is binding if" (3) "injustice can be avoided only by enforcement of the promise." *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 93 (Fla. 2013) (citation omitted). "The promise must be 'definite' and of a 'substantial nature,' the evidence 'clear and convincing,' and the reliance 'reasonable[.]'" *GVB MD*, 2019 WL 6130825, at *9 (alteration added; citations omitted). Because the Court finds the CEDA Clinics do not satisfy the first element, it does not address elements two and three.

Regarding the first element, the "promise" alleged in Counts VI, IX, and XII is GEICO's "confirmations, identification cards, and other documentation confirming that Claimant was insured under a policy of insurance provided by GEICO, which indicated to [the CEDA Clinics] that GEICO would be responsible" to pay the claims. (Countercls. ¶¶ 200, 257, 312 (alteration added)). These allegations are clearly deficient. The CEDA Clinics do not allege GEICO's

confirmation "contained a representation as to precisely what services would be covered, how much payment would be made for those services, when payment would be made, or to whom payment would be made." *Columna, Inc.*, 2019 WL 4345675, at *5. The CEDA Clinics have not alleged enough facts that GEICO made a sufficiently definite promise required for a promissory estoppel claim.[14] *See Vencor Hosps. S., Inc. v. Blue Cross & Blue Shield of R.I.*, 86 F. Supp. 2d 1155, 1165 (S.D. Fla. 2000) ("[P]romissory estoppel does not apply if the terms of the promise are indefinite." (alteration added; citations omitted)).

Numerous courts in this District have routinely dismissed promissory estoppel claims such as this one, where the alleged promise is not definite and actuated by an insurer's verification of coverage.[15] *See, e.g.*, *GVB MD*, 2019 WL 6130825, at *10 (dismissing promissory estoppel claim because provider failed to "allege that [the insurer] made a sufficiently definite promise to pay any amounts for any procedures regarding any patients" (alteration added)); *Columna, Inc.*, 2019 WL 4345675, at *5 (dismissing medical provider's promissory estoppel claim because its allegations

---

[14] The CEDA Clinics contend once GEICO confirmed PIP coverage existed, the CEDA Clinics were not required to "obtain further assurances or representations from GEICO about whether payment would be issued and at what amount[]" because Florida Statutes section 627.736(5)(a) requires GEICO to pay the CEDA Clinics a reasonable amount for medical services. (CEDA Clinics' Resp. 15 (alteration added; emphasis omitted)). The CEDA Clinics cite no persuasive authority — nor any authority — for the proposition section 627.736(5)(a) converts an indefinite promise — as here — to a definite promise. As explained, to state a promissory estoppel claim, the CEDA Clinics must allege a definite "*promise* which the *promisor* should reasonably expect to induce action or forbearance on the part of the promisee or a third person." *DK Arena, Inc.*, 112 So. 3d at 93 (emphasis added). A *definite promise* from a *promisor* is required to state a promissory estoppel claim. The CEDA Clinics fail to satisfy this requirement.

[15] The CEDA Clinics contend the "very same allegations and arguments were analyzed" in *Baptist Hospital of Miami, Inc.*, 385 F. Supp. 3d 1289. (CEDA Clinics' Resp. 14). Not so. Again, in *Baptist Hospital*, the plaintiff-providers filed suit against the defendant-insurer, seeking more than $800,000 for medically necessary and covered services pursuant to an agreement entered between the plaintiff-providers and the defendant-insurer. *See id.* at 1291. Regarding promissory estoppel, the *Baptist Hospital* court merely observed the plaintiff-providers sufficiently stated a plausible claim, doing so briefly and with minimal discussion. *See id.* at 1293–94. The *Baptist Hospital* opinion did not address the numerous decisions in this District which have held an insurer's confirmation of coverage is too indefinite a promise to sustain a promissory estoppel claim. It is clear *Baptist Hospital* did not address the very same allegations and arguments.

were too indefinite); *United Healthcare Ins. Co.*, 2019 WL 3409183, at \*8 (dismissing promissory estoppel claim because the allegations presented were insufficient to allege a definite promise); *Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, No. 14-81271-cv, 2015 WL 2198470, at \*5 (S.D. Fla. May 11, 2015) ('[A]n insurance company's confirmation of coverage is a representation that the patients are 'covered for the type of treatment' proposed by the health care provider, not a definite promise to pay upon which reliance would be reasonable." (alteration added; emphasis and footnote call number omitted)).

Counts VI, IX, and XII are dismissed.

### 4.   Defamation (Count XIV)

Count XIV alleges GEICO defamed the CEDA Clinics by disclosing false statements to their patients.  (*See* Countercls. ¶¶ 332–50).  The elements of a defamation cause of action are: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory."  *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214 n.8 (Fla. 2010) (quotation marks omitted; quoting *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).  To survive a motion to dismiss "[i]n a defamation case, a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred."  *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) (alteration added; quotation marks and citation omitted).

GEICO contends the CEDA Clinics' defamation claim fails because the allegations lack the necessary detail and are far too indefinite.  (*See* GEICO's Mot. 19; GEICO's Reply 10–11). According to GEICO, the CEDA Clinics "provide no real details regarding who made the

supposedly false statements, when they were made, to whom they were made, and so forth." (GEICO's Mot. 19).  Not so.

The CEDA Clinics have adequately pled each element of a defamation claim to survive a motion to dismiss.[16]  The CEDA Clinics allege: (1) GEICO intentionally and without justification made false and defamatory statements about the CEDA Clinics to patients; (2) GEICO resorted to tarnishing the CEDA Clinics' reputation by telling patients certain CEDA Clinics are not properly licensed and that the patients should pursue treatment at other licensed facilities; (3) GEICO acted intentionally and/or negligently because it made the statements with actual knowledge of the statements' falsity; (4) GEICO's false statements were designed and made with the intent to impugn the CEDA Clinics' reputation and injure or harm their business; and (5) the CEDA Clinics suffered damages.  (*See* Countercls. ¶¶ 332–50).  In further support, the CEDA Clinics identify: (1) the specific statements which the CEDA Clinics contend are defamatory; (2) two patients who were targets of GEICO's statements; (3) the clinics where the two named patients treated; (4) the clinic-chiropractor who learned of GEICO's deliberate and intentional dissemination; (5) and the timeframe within which the publications occurred.  (*See id.* ¶¶ 336–37; *see also id.* ¶¶ 67–75).

---

[16] The cases GEICO cites concerning the level of detail necessary to state a defamation claim fail to persuade.  (*See* GEICO's Mot. 19 (citing *KJ Chiropractic Ctr. LLC*, 2014 WL 12617573, and *Bell v. Novartis Pharm. Corp.*, No. 8:08-cv-00030, 2008 WL 2694893 (M.D. Fla. July 3, 2008))).  In *KJ Chiropractic*, the court *partially* dismissed the defamation counterclaim because the counter-plaintiffs failed to allege the who, what, and when in order to maintain a cause of action for defamation.  *See* 2014 WL 12617573, at *3.  In *Bell*, the court dismissed the plaintiff's defamation claim because the complaint failed to disclose the identities of the defendant's employee, the representative alleged to have heard the statement, the time frame in which the alleged defamer made the statement, and how the statement was made in connection with his or her performance or job duties as the defendant's employee.  *See* 2008 WL 2694893, at *4.  Here, details are provided, and the CEDA Clinics allege "enough factual content to raise [their] right to relief above a speculative level."  *Walter v. Jet Aviation Flight Servs., Inc.*, No. 9:16-cv-81238, 2016 WL 7116641, at *1 (S.D. Fla. Dec. 7, 2016) (alteration added); *see also id.* (allowing defamation claim to proceed where the plaintiff's claim provided the defendant "fair notice of what the claim is and the grounds upon which it rests" (internal quotation marks and citation omitted)).

Taking the allegations in the counterclaim as true and viewing them in the light most favorable to the CEDA Clinics, the Court finds the CEDA Clinics state a defamation claim under Florida law.  The CEDA Clinics' defamation claim may proceed.

### 5.  Tortious Interference (Count XIII)

In Count XIII, the CEDA Clinics allege GEICO conspired to tortuously interfere with the CEDA Clinics' contractual and prospective business relationships.  (*See* Countercls. ¶¶ 316–31). To state a Florida law claim for tortious interference with a business relationship, a plaintiff must allege "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the business relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985).  "[T]he interfering defendant must be a third party, a stranger to the business relationship." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001) (alteration added; quoting *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999)).

GEICO first asserts — in a perfunctory manner — the CEDA Clinics fail to state a tortious interference claim because they do not specifically identify the customers with whose business GEICO allegedly interfered.[17]  (*See* GEICO's Mot. 20).  The Court disagrees.  The CEDA Clinics allege they "maintain contractual or prospective business relationships with patients who sustained personal injuries in motor vehicle accidents, and who were insured under policies of insurance

---

[17] GEICO argues the Court should dismiss the CEDA Clinics' tortious interference claim because the underlying defamation allegations supporting the interference claim are defective.  (*See* GEICO's Mot. 19). Having found the CEDA Clinics adequately plead a defamation claim, the Court need not address this argument.  Moreover, beyond the arguments presented (and rejected) in this Order, GEICO does not challenge the sufficiency of the CEDA Clinics' remaining factual allegations as to the tortious interference claim.

issued by GEICO" (Countercls. ¶ 325); and GEICO "intentionally and without justification interfered with these relationships by. . . falsely advising the patients that the CEDA [Clinics] are not properly licensed" (*id.* ¶ 327 (alterations added)).  In support of these allegations, the CEDA Clinics specifically identify two patients whose business was diverted as a result of GEICO's interference and false statements.  (*See id.* ¶¶ 320–21, 324).  These statements are sufficient to allege GEICO intentionally and unjustifiably interfered with the CEDA Clinics' business relationship with GEICO-insured patients.

In any event, to state a claim for tortious interference with a business relationship, a party need only plead "a business relationship with *identifiable* customers," not specifically *named* customers, as GEICO insists.  *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821 (Fla. 1996) (emphasis added).  The CEDA Clinics satisfy this pleading requirement.  *See, e.g.*, *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1275 (11th Cir. 2019) (reversing district court's dismissal of tortious interference claim and explaining "[w]e cannot agree with the district court that the instant five complaints' failure to name a plaintiff, to identify specific defendants, or to identify specific customers in the allegations relating to tortious interference deprived the [d]efendants of fair notice." (alterations added)); *Bostwick Labs., Inc. v. Farley*, No. 14-60316-Civ, 2014 WL 12580032, at *4 (S.D. Fla. Aug. 1, 2014) (denying motion to dismiss even though the plaintiff did not identify customers by name and noting "[t]hrough discovery, [the defendant] can learn the identity of the companies [the plaintiff] refers to in the [complaint], as well as the nature and type of business relationship those companies had with [the plaintiff]" (alterations added)); *AstroTel, Inc. v. Verizon Fla., LLC*, No. 8:11-cv-2224, 2012 WL 1581596, at *8 (M.D. Fla. May 4, 2012) ("Although [the plaintiff] does not plead specific customer

contracts that were injured, that is not necessary at [the motion-to-dismiss stage]." (alterations added)).

GEICO next argues the CEDA Clinics' claim fails because there can be no tortious interference predicated upon the allegation an insurance company interfered with the business relationships between its insureds and a service provider who accepts the insured's insurance payments. (*See* GEICO's Mot. 20). According to GEICO, the CEDA Clinics' tortious interference claim is not cognizable as the CEDA Clinics allege GEICO "was a party to the purported business relationship, not a stranger to the relationship." (GEICO's Reply 11 (emphasis removed)).

The CEDA Clinics state GEICO is improperly seeking to assert a qualified privilege to interfere at the motion-to-dismiss stage. (*See* CEDA Clinics' Resp. 19). Despite the improper timing of GEICO's argument, the CEDA Clinics insist GEICO's privilege does not apply when its actions are malicious or carried out through improper means, such as misrepresentations. (*See id.*). The CEDA Clinics explain the counterclaim alleges sufficient facts permitting a plausible inference GEICO used improper methods to interfere with their business relationships. (*See id.*). The Court agrees.

GEICO expends considerable effort explaining it has a protectible interest in the relationship between the CEDA Clinics and patients who are insured by GEICO, and as such, GEICO is no stranger to the business relationship and thus cannot be held liable.[18] (*See* GEICO's Mot. 20). GEICO's argument fails for two reasons. First, GEICO's privilege-to-interfere

---

[18] *Gunder's Auto Center v. State Farm Insurance*, 617 F. Supp. 2d 1222 (M.D. Fla. 2009), and *Hernandez Auto Painting & Body Works, Inc. v. State Farm Mutual Automobile Insurance Co.*, No. CV408-256, 2009 WL 2952066 (S.D. Ga. Sept. 14, 2009), on which GEICO relies, are off-point. Neither *Gunder's Auto Center* nor *Hernandez Auto Painting & Body Works, Inc.* addressed improper methods of interference. *See Gunder's Auto Ctr. v. State Farm Mut. Auto. Ins. Co.*, 422 F. App'x 819, 822 (11th Cir. 2011) (affirming dismissal of tortious interference claim where the plaintiff *failed to raise* its "improper means" argument in response to the defendant's motion to dismiss); *Hernandez Auto Painting & Body Works, Inc.*, 2009 WL 2952066, at *2 (applying Georgia law and not discussing improper methods of interference).

17

contention is not appropriately considered at the motion-to-dismiss stage. *See, e.g.*, *Persaud v. Bank of Am., N.A.*, No. 14-21819-Civ, 2014 WL 4260853, at *15 (S.D. Fla. Aug. 28, 2014) (finding the "privilege argument . . . unavailing on a motion to dismiss" (alteration added)); *Novell v. Bank of Am. Corp.*, No. 14-cv-80672, 2014 WL 7564678, at *8 (S.D. Fla. Dec. 3, 2014) (collecting cases and finding the defendants' privilege argument inappropriate at the motion-to-dismiss stage).

Second, "[i]nterested parties may still be held liable . . . if they use improper methods of interference, such as . . . misrepresentations and illegal conduct." *Textile USA, Inc. v. Diageo N. Am., Inc.*, No. 15-24309-Civ, 2017 WL 10187642, at *4 (S.D. Fla. July 31, 2017) (alterations added; citation omitted). The CEDA Clinics allege GEICO acted "intentionally and without justification . . . by . . . falsely advising the patients that the CEDA [Clinics] are not properly licensed" (Countercls. ¶ 327 (alterations added)); "GEICO's false statements . . . were intentional and/or grossly negligent" (*id.* ¶ 329 (alteration added)); and "GEICO's false statements were made with malice and the intent to tarnish the CEDA [Clinics'] reputation" (*id.* ¶ 330 (alteration added)). The CEDA Clinics' allegations permit a plausible inference GEICO used improper methods to interfere with the CEDA Clinics' business relationships. *See Novell*, 2014 WL 7564678, at *8 (denying motion to dismiss even though the defendant asserted a privilege to interfere with the business relationship because the plaintiff adequately alleged improper methods).

Count XIII survives GEICO's Motion.

**B.     The CEDA Clinics' Motion**

The CEDA Clinics request the Court exercise its discretion under *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942), and abstain from hearing "certain individual claims that are the subject of pending . . . [PIP] lawsuits in Florida state-courts." (CEDA Clinics' Mot. 1 (alterations added)). The Court declines to do so.

As noted, it is wholly within a federal court's discretion whether to entertain a case under the Declaratory Judgment Act, 28 U.S.C. section 2201, even if the action properly falls within the Court's jurisdiction.  Consequently, "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close."  *Wilton*, 515 U.S. at 288 (footnote call number omitted).

While the parties extensively brief the *Brillhart/Wilton* abstention doctrine, the Court remains unconvinced the doctrine applies to this case.[19]  (*See generally* CEDA Clinics' Mot.; GEICO's Resp.; CEDA Clinics' Reply).  Indeed, "[w]hen an action includes a claim for declaratory relief which falls within the district court's discretionary jurisdiction, and a claim for non-declaratory relief[,] . . . most courts in the Eleventh Circuit have applied the *Colorado River* abstention doctrine[20] rather than the *Brillhart/Wilton* abstention doctrine."  *Scottsdale Ins. Co.*, 2018 WL 7917049, at *4 (alterations added; footnote call number omitted).  Numerous courts in

---

[19] The CEDA Clinics urge the Court to apply the "heart of the matter" test and analyze the factors the Eleventh Circuit set out in *Ameritas Variable Life Insurance Company v. Roach*, 411 F.3d 1328 (11th Cir. 2005).  (*See* CEDA Clinics' Mot. 8–20); *see also Endurance Assurance Corp. v. Zoghbi*, 403 F. Supp. 3d 1301, 1307 (S.D. Fla. 2019) (discussing the "heart of the matter" test (internal quotation marks and citation omitted)).  According to the CEDA Clinics, the outcome of GEICO's 42 non-declaratory judgment claims hinges on the outcome of the single-count declaratory judgment claim.  (*See* CEDA Clinics' Mot. 8–11).  Not so.  A review of the Complaint reveals GEICO's case — at its heart — is not a declaratory judgment action.  (*Compare* Compl. ¶¶ 1179–87 (declaratory relief count), *with id.* ¶¶ 1188–1500 (remaining 42 counts), *and id.* ¶¶ 1–1178 (general allegations)).  The Court declines the CEDA Clinics' invitation to engage in an extended discussion of the *Ameritas* factors, especially where, as here, it is clear GEICO's 42 non-declaratory judgment claims do not hinge on the outcome of the declaratory judgment count.

[20] "The *Colorado River* abstention doctrine requires courts to exercise jurisdiction unless the defendant can satisfy the burden of showing exceptional circumstances exist to warrant the extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  *Scottsdale Ins. Co. v. Granada Ins. Co.*, No. 18-cv-21207, 2018 WL 7917049, at *4 (S.D. Fla. July 13, 2018) (internal quotation marks and citations omitted); *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)  ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  (internal quotation marks and citation omitted)); *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004) (discussing *Colorado River* abstention doctrine).

CASE NO. 19-22206-CIV-ALTONAGA/Goodman

this District have "held the *Brillhart/Wilton* doctrine inapplicable in similar circumstances." *State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, L.L.C.*, 9 F. Supp. 3d 1303, 1308 (M.D. Fla. 2014) (collecting cases from this District); *see also id.* (declining to apply *Brillhart/Wilton* abstention where the insurer sought numerous forms of relief related to the defendant-medical providers' fraudulent PIP scheme).

"As the moving part[ies], [the CEDA Clinics] fail[] to satisfy [their] burden of showing the considerably more discretionary *Brillhart*/*Wilton* abstention doctrine applies where, as here, [GEICO] seeks both declaratory and non-declaratory relief." *Scottsdale Ins. Co.*, 2018 WL 7917049, at *4 (alterations added). The Court will not "shirk its virtually unflagging obligation to exercise the jurisdiction given [to it]." *Green v. Jefferson Cty. Comm'n*, 563 F.3d 1243, 1251 (11th Cir. 2009) (alteration in original; quotation marks and citation omitted). Accordingly, the CEDA Clinics' request for abstention under the *Brillhart*/*Wilton* doctrine is denied.

## IV.    CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiffs/Counter-Defendants, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co.'s Motion and Supporting Memorandum to Dismiss Counterclaims **[ECF No. 85]** is **GRANTED in part**. Counts I–III; V–VI; VIII; IX; and XI–XII of the Counter-Plaintiffs' Counterclaims **[ECF No. 84]** are **DISMISSED**. Counts IV; VII; X; and XIII–XIV may proceed.

2. Defendants, the CEDA Clinics' Motion to Stay or Abstain Temporarily as to Claims that are the Subject of Pending State Court Actions **[ECF No. 86]** is **DENIED**.

CASE NO. 19-22206-CIV-ALTONAGA/Goodman

**DONE AND ORDERED** in Miami, Florida, this 13th day of March, 2020.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

21