UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:19-cv-22206-Altonaga/Goodman

GOVERNMENT EMPLOYEES
INSURANCE CO., et al.,

    Plaintiffs,

vs.

MARK A. CERECEDA, D.C., et al.,

    Defendants.

**INDIVIDUAL DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO POST-DISCOVERY HEARING ADMINISTRATIVE ORDER (ECF NO. 109)**

Individual Defendants[1] submit this memorandum of law pursuant to Judge Goodman's December 31, 2020 Post-Discovery Hearing Administrative Order (ECF 109). GEICO's answers to Individual Defendants' Interrogatories 1, 7, 13, and 19 fail to comply with Judge Goodman's November 2, 2020 Post-Discovery Hearing Administrative Order (ECF 102) and with Rules 26 and 33 of the Federal Rules of Civil Procedure. Specifically, Plaintiffs refuse (or are otherwise unable) to identify specific claims for medical services that they believe to be fraudulent and, thus, the subject of their claims for damages in this litigation. Rather, they have taken the position, generally, that "all" of the services Defendants submitted to them are "Fraudulent Services" and "medically unnecessary" and, therefore, refuse to identify the different reasons alleged in the Complaint upon which they claim each of the individual services was fraudulent. These answers are not complete and lack the specificity necessary to allow Defendants to defend against these claims. As such, the Court should compel Plaintiffs to provide complete answers to these interrogatories or, in the alternative, prohibit Defendants from presenting, in support of their claims, any evidence pertaining to why they believe any individual medical services are fraudulent.

**I.   Background**

Plaintiffs filed a 406-page, 43-count complaint ("Complaint," ECF 1) alleging that they recently discovered a massive fraud and racketeering scheme. Plaintiffs allege that Defendants conspired to defraud GEICO by providing health care services that were not medically necessary, provided at unlicensed facilities, by unlicensed therapists, without proper supervision, upcoded, and/or not provided at all. Plaintiffs now refuse to produce information in support of these claims.

---

[1] The names of the "Individual Defendants" are set forth in Individual Defendants' Interrogatories, attached hereto as Exhibit 1.

The parties engaged in the mutual exchange of discovery throughout the last year, including during the six-month administrative closure of the case. Defendants have produced more than one million pages, including all patient files containing bills submitted to GEICO since 2012. Plaintiffs have produced more than three million pages, including claims files related to the same patients. Prior to the administrative closure, the Individual Defendants served interrogatories that are the subject of this memorandum (Exhibit 1). After the case was reopened, Plaintiffs served answers that were incomplete, non-responsive, and contained improper objections. (Exhibit 2).

Following an October 30, 2020 discovery hearing on the adequacy of Plaintiffs' initial answers, Judge Goodman ordered that Plaintiffs "provide answers to all interrogatories at issue in the hearing," because "Defendants are entitled to know which of the medical services are being challenged, and why." (ECF 102). Plaintiffs' amended answers were no more complete than the original answers. ("Plfs. Am. Ans.," Exhibit 3).[2] Rather than specify which claims were fraudulent, which services were medically unnecessary, which initial exams were upcoded, and which services were never provided in the first instance, Plaintiffs—incredulously—wrote that "all" of the services provided by Defendants fit within each of these categories.

The parties requested a second discovery hearing before Judge Goodman. At that hearing, on December 30, 2020, Plaintiffs articulated two arguments that are foundational to how they intend to prosecute this action. First, consistent with their amended answers, Plaintiffs intend to advance a position that all services provided by Defendants were fraudulent and medically unnecessary. Second, consistent with the report of Plaintiffs' expert James N. Dillard, M.D. (ECF

---

[2] Plaintiffs further amended their responses on January 7, 2021 (Exhibit 4). Plaintiffs now identify 10 specific examples of services (of the more than 450,000 at issue in the Complaint) that they allege were never provided. These are the same examples Plaintiffs included in their Complaint in support of their sweeping conclusion that all of the services were fraudulent. Plaintiffs should be required to provide this same type of response as to each of the services they allege to be fraudulent.

110-1), Plaintiffs do not intend to offer expert opinions as to any individual medical services, individual bills, or individual patients. In other words, Plaintiffs do not intend to pursue their legal claims—including claims that medical doctors and chiropractors billed for medically unnecessary services—on an individualized, patient-by-patient, claim-by-claim, or service-by-service basis.

## II. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense" and specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 33 allows a party to serve written interrogatories, which "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Finally, Rule 37(a) allows a party to request the entry of an order compelling discovery from another party. In particular, Rule 37(a)(3)(b)(iii)–(iv) allows a party to request an order compelling better answers where a party "fails to answer an interrogatory." An "evasive or incomplete" answer is considered as a complete failure to answer. Fed. R. Civ. P. 37(a)(4).

## III. Argument

Plaintiffs made a calculated decision to file a 43-count complaint that is based on multiple alternative theories of fraud. For example, certain of Plaintiffs' fraud allegations may potentially be proven through extrinsic evidence that applies to all patients and claims, such as Plaintiffs' allegations that the CEDA facilities lack the licenses required under Florida's Health Care Clinic Act. By contrast, other allegations, as they are set forth in the Complaint, can only be proven on

an individualized claim-by-claim basis. The latter category includes Plaintiffs' allegations that certain services provided by Defendants and billed to GEICO were not medically necessary.[3]

Plaintiffs seem intent on proving their claims, including claims of lack of medical necessity, based on generalized statements, together with expert opinions that do not rely on a review of the specific patient files or individual medical services. Likewise, Plaintiffs refuse to identify in their interrogatory responses the specific reasons supporting their position that individual medical services are fraudulent, instead treating all individual services as part of one sweeping fraud. The Court should not condone these hide-the-ball discovery tactics. Alternatively, if Plaintiffs refuse to identify the specific reasons upon which they are challenging these medical services, the Court should preclude Plaintiffs from presenting any information at trial about the specific reasons for challenging the specific individual medical services or claims as fraudulent.

### A. Individual Defendants Are Entitled to Claim-by-Claim Discovery

Plaintiffs' position that every medical service provided at the CEDA facilities was medically unnecessary—and that this claim can be proven without a review of the individual bills and patient files—is contradicted by the voluminous discovery exchanged by the parties. It strains

---

[3] The phrase "medically necessary" is defined in the Florida PIP Statute. Per the statutory definition, a medically necessary service is one that "a prudent physician would provide" that is: "(a) In accordance with generally accepted standards of medical practice; (b) Clinically appropriate in terms of type, frequency, extent, site, and duration; and (c) Not primarily for the convenience of the patient, physician, or other health care provider." Fla. Stat. § 627.732(2). The Court requested that the parties elaborate on the possibility, articulated by Plaintiffs during the December 30 discovery hearing, that a medical service may be appropriate for a patient but not medically necessary under the statute. Per the statutory definition, clinical appropriateness is one of three elements of medical necessity, so technically a service could be clinically appropriate for a patient, but not medically necessary because, for example, it was not provided in accordance with the generally accepted standards of medical practice. That technicality, however, has no bearing on Defendants' entitlement to discovery on Plaintiffs' medical necessity allegations. Indeed, the fact that a service may be medically unnecessary for a variety of reasons underscores the need for Plaintiffs to explain why each individual service was not medically necessary.

credulity for Plaintiffs to assert that every one of the exams and medical treatments provided to accident victims by licensed medical professionals for the better part of a decade was medically unnecessary. Plaintiffs even go so far as asserting that each of the initial and follow-up examinations that Defendants billed to GEICO "were not actually provided in the first instance." It would seem to be impossible to prove that all of these services were medically unnecessary—much less never provided in the first instance—without examining each claim individually.

In addition to Plaintiffs' answer that "all" services provided by Defendants were medically unnecessary being unresponsive on its face, it violates the Court's Nov. 2 Order, which states, in part, "Defendants are entitled to know which of the medical services are being challenged, and why." (ECF 102 at 2). Plaintiffs' categorial answers, accompanied by a list of every claim submitted by Defendants to GEICO, does not set forth *which* medical services are being challenged. In addition, Plaintiffs do not even attempt to explain *why* those services were not medically necessary. Indeed, Plaintiffs' circular reasoning that all services were fraudulent, and all fraudulent services were not medically necessary, does not comply with the Court's Order.[4]

Furthermore, Plaintiffs' supplemental answers are insufficient under the law, which requires that each interrogatory be answered "fully in writing." Fed. R. Civ. P. 33(b)(3). Courts have concluded that allegations of large-scale fraud by medical providers must be established on

---

[4] It is worth noting that the interrogatories at issue were served by the Individual Defendants—medical doctors, chiropractors, and registered chiropractic assistants operating under the rules and regulations of their respective professions—who Plaintiffs have alleged provided certain medical treatments without medical necessity and never even provided certain services in the first instance. These individuals have a right to understand which of the medical services they provided pertain to the various allegations and theories in Plaintiffs' Complaint and the more than 450,000 medical services on the lists attached thereto. *See* Fed. R. Civ. P. 26(b)(1). That information is in GEICO's possession and control. In fact, GEICO has already examined each of the services on a claim-by-claim basis at least once, when GEICO's own claims adjusters reviewed every claim on every bill from Defendants in order to reimburse Defendants under the Florida PIP statute.

a claim-by-claim basis. *See Gov't Employees Ins. Co. v. MLS Med. Group LLC*, CIV.A. 12-7281 SRC, 2013 WL 6384652, at *11 (D.N.J. Dec. 6, 2013) (stating a RICO claim "require[s] particularized, claim-by-claim factual allegations as to the predicate fraud"). At the pleading stage in this case, the Court concluded that Plaintiffs' fraud-based claims satisfied Rule 9(b)'s heightened pleading standards. Indeed, Plaintiffs provided specific examples in the Complaint of medical services provided to approximately 375 patients that Defendants alleged to be fraudulent, including the reasons why they believed those specific medical services to be fraudulent.[5] They also attached to the Complaint lists of more than 450,000 individual medical services that allegedly comprise the services for which they are seeking to recover damages. Now, at the discovery stage, Defendants are entitled to discovery regarding all of these medical services that Plaintiffs allege to be fraudulent and the evidence Plaintiffs may (or may not) have to support these conclusions.

### B. If Plaintiffs Refuse to Provide Claim-by-Claim Discovery, They Should be Precluded from Presenting Evidence Related to Individual Claims.

Plaintiffs' expert report, consistent with their interrogatory responses, offers general conclusions and does not include analysis based on a claim-by-claim review. If Plaintiffs refuse—despite the Court's order otherwise—to articulate the specific reasons why they believe the various medical services and claims are fraudulent, Plaintiffs should be precluded from presenting evidence later on in the litigation related to any individual medical services and claims.

A court may limit the scope of evidence or theories of liability a party may offer in support of its case based on its discovery responses or expert reports. *See Cretney-Tsosie v. Creekside Hospice II, LLC*, 2:13-CV-00167, 2016 WL 1257867, at *6 (D. Nev. Mar. 30, 2016). In that government-intervened *qui tam* case involving allegations of fraudulent healthcare billings, the

---

[5] Despite including these patient-specific examples of medical services in their Complaint, Plaintiffs' interrogatory answers do not discuss any individual services or patients other than the ten examples included in their second amended responses dated January 7, 2021 (Exhibit 4).

plaintiff in intervention (the "US") produced claims data for all bills submitted by the provider over a three-year period. In discovery responses, however, the US did not explain which claims related to the various allegations in its complaint. *Id.* Moreover, its expert's conclusion that certain claims were fraudulent was based on a review of 48 patient files, even though the claims at issue— like the claims here—included thousands of patients and "258,000 rows of claims data." *Id*. The court held that the US could not use information "not timely disclosed in its expert disclosures, to supply evidence on a motion, at hearing, or at trial," meaning that the US could only present individualized evidence of fraud with respect to the 48 specific files reviewed by its expert, and would be "precluded from altering its liability or damages theory and method of proof." *Id.*

Likewise, Plaintiffs here produced wholesale claims data without any guidance as to why they believe specific claims were fraudulent or medically unnecessary, and the opinions of their expert are based entirely on generalizations, rather than a detailed review of the specific patient files. Indeed, with the exception of 10 examples identified in their January 7, 2021 supplemental answers (Exh. 4), Plaintiffs have not identified specific claims in their amended interrogatory answers and their expert, Dr. Dillard, has not made individualized determinations of fraud or lack of medical necessity with respect to *any* of the claims at issue. Unless Plaintiffs provide these individualized responses, the Court should preclude Plaintiffs from presenting evidence related to any individual claims, patients, or medical services at hearings, on motions, or at trial.

## IV. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court compel complete answers to Individual Defendants' Interrogatories 1, 7, 13, and 19, or, in the alternative, preclude Defendants from presenting any evidence at hearings, on motions, or at trial pertaining to any of the individual medical services that are the subject of Plaintiffs' claims.

- 8 -

Dated: January 11, 2021

STUMPHAUZER FOSLID
SLOMAN ROSS & KOLAYA, PLLC
Two South Biscayne Boulevard, Suite 1600
Miami, Florida 33131
Tel.: (305) 614-1400
Fax: (305) 614-1425

By: */s/ Erica L. Perdomo*
TIMOTHY A. KOLAYA
Florida Bar No. 056140
tkolaya@sfslaw.com
ADAM M. FOSLID
Florida Bar No. 0682284
afoslid@sfslaw.com
RYAN K. STUMPHAUZER
Florida Bar No. 0012176
rstumphauzer@sfslaw.com
ERICA L. PERDOMO
Florida Bar No. 105466
eperdomo@sfslaw.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 11, 2021, I electronically filed the foregoing document with the clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Erica L. Perdomo*
ERICA L. PERDOMO
